Oscar PADILLA–AGUSTIN, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

Nos. 92–70611, 93–70351.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided April 21, 1994.

Lee A. O'Connor (on brief and argued), San Fernando Valley Neighborhood Legal Services, Pacoima, CA, for petitioner in No. 92–70611.

Lee A. O'Connor (on brief and argued), San Fernando Valley Neighborhood Legal Services, Pacoima, CA, for petitioner in No. 93–70531.

Timothy B. Walthall, Office of Immigration Litigation, U.S. Dept. of Justice (on brief and argued); for respondent in No. 92–70611.

Timothy B. Walthall, Office of Immigration Litigation, U.S. Dept. of Justice (on brief and argued); David J. Kline, Asst. Director; and

April Dawson, Law Clerk, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, (on brief), for respondent in No. 93–70351.

Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ; Partial concurrence and partial dissent by Judge O'SCANNLAIN.

FERNANDEZ, Circuit Judge:

Oscar Padilla–Agustin, a native and citizen of Guatemala, petitions for review of the decision of the Board of Immigration Appeals which summarily dismissed his appeal of the Immigration Judge's ruling denying him asylum and withholding of deportation. He also petitions for review of the BIA's denial of his motions to reopen and reconsider its decision. Padilla was found to be in violation of Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1988), because he entered the United States without inspection.

Padilla argues that the BIA erred in summarily dismissing his appeal without adequately informing him that it was contemplating summary dismissal, or, in the alternative, that the BIA erred in summarily dismissing his appeal because his Notice of Appeal adequately specified the reasons for the appeal. He also contends that the BIA erred in denying his first motion to reopen and reconsider, because he presented new evidence and the summary dismissal was in error. We affirm the judgment of the BIA on the first motion to reopen and reconsider. We reverse the ruling of the BIA on the second motion to reconsider and on the summary dismissal because we determine the notice given Padilla of the potential for summary dismissal was, when coupled with the subsequent procedures, constitutionally deficient.

## BACKGROUND

Padilla is a 51 year old native and citizen of Guatemala who entered the United States without inspection on November 9, 1990. On November 10, 1990, the Immigration and Naturalization Service issued an Order to Show Cause why he should not be deported under Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251 (1988). During a hearing before the IJ, at which he was not represented by counsel, Padilla conceded his deportability, designated Guatemala as the country for his deportation, and submitted his asylum application and supporting documentation. Since Padilla spoke no English, only his native Spanish, a court interpreter assisted him at this hearing and at all of those which followed. The IJ denied Padilla's asylum and withholding of deportation applications. The IJ also denied Padilla's request for voluntary departure.

Padilla, still representing himself, filed a Notice of Appeal, form EOIR–26, with the BIA on September 14, 1991, without any supporting brief. The only reasons for appeal stated on the form were:

> I request my Political Asylum request be accepted because I fled my country in order to save myself because the Political situation I was persecuted. Now if I return I'll be—mistreated or killed I need the chance to stay in this country until the situation change in my country.

He also checked boxes to state that he waived oral argument and would not file a separate brief or statement.

The BIA summarily dismissed Padilla's appeal pursuant to 8 C.F.R. § 3.1(d)(1–a)(i) (1992). It reasoned that he "in no meaningful way identified the basis for the appeal ... [and] failed to specify any respect in which the immigration judge's decision [was] incorrect."

On March 24, 1992, Padilla, represented by counsel, filed a motion to reconsider and reopen the matter before the BIA. He sought to argue the merits of the IJ's decision against him. He also submitted some newspaper clippings concerning the state of affairs in Guatemala and the activities of guerrillas there. The BIA denied the motion to reopen and reconsider on June 8, 1992. It reasoned that (as to the motion to reconsider) the summary dismissal was entirely prop-

er because Padilla had only offered general and conclusory statements in support of his appeal. As to the motion to reopen, it said that he had failed to present new facts or evidence that would warrant reopening the matter. He petitioned this court for review of that ruling on September 4, 1992.

Padilla then filed a second motion to reconsider the BIA's summary dismissal of his appeal based on the fact that the BIA did not notify him, before the actual dismissal, that it was considering summary dismissal. He claimed that he did not timely receive a copy of the INS's motion requesting a dismissal, due to addressing errors or due to forwarding delays at the post office. He also argued that he was legally entitled to receive notice of the possibility of summary dismissal. The BIA rejected his contentions and denied the motion on February 22, 1993, reasoning that it had actually dismissed the appeal on a different basis from that requested by the INS and no legal requirement mandated that an alien be notified of an impending summary dismissal. Padilla then petitioned for review of that decision. Both petitions are now before us.

## JURISDICTION AND STANDARDS OF REVIEW

### A. Jurisdiction

Our jurisdiction is based upon 8 U.S.C. § 1105a(a). However, as a threshold matter, the INS contends that this court lacks jurisdiction over the BIA's decision to summarily dismiss because Padilla did not file a separate appeal of that decision before the BIA ruled on his first motion to reopen and reconsider. This contention is without merit. It is well-established in this Circuit that "[b]ecause the time for filing a petition for judicial review on the underlying order does not begin to run until the agency acts upon [a] motion to reopen, it is not necessary for a petitioner to file a protective appeal from the BIA's original decision in order to preserve the issues raised therein." *Chu v. INS*, 875 F.2d 777, 779–80 (9th Cir.1989) (internal quotation omitted). Indeed, "[n]ot only is a premature petition not necessary, it is a nullity because there is no final deportation order to review." *Id.* In other words,

where an alien "seeks to reopen his case with the BIA before he files a petition for review," as Padilla did here, "he must wait to ask for his one hearing in the Ninth Circuit until *after* the BIA has ruled on his motion to reopen." *Ogio v. INS*, 2 F.3d 959, 960 (9th Cir.1993) (per curiam) (emphasis in original). We therefore have jurisdiction to review both the BIA's summary dismissal of Padilla's appeal and its subsequent decisions on the motions to reopen and reconsider.

### B. Standard of Review

Although this Circuit has merely analyzed whether summary dismissals by the BIA are "appropriate," without articulating the applicable standard of review (see *Martinez–Zelaya v. INS*, 841 F.2d 294, 295 (9th Cir.1988)), other circuits have reviewed summary dismissals by the BIA based upon lack of specificity of the bases for appeal under an abuse of discretion standard. See *Townsend v. INS*, 799 F.2d 179, 182 (5th Cir.1986) (per curiam). The BIA's decisions denying reconsideration, as well as motions to reopen, are also reviewed for an abuse of discretion. *INS v. Doherty*, —— U.S. ——, ——, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992) (denial of motion to reopen reviewed for abuse of discretion regardless of the underlying basis of the alien's request to reopen); *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988) (denial of motion to reopen based on failure to introduce previously unavailable, material evidence reviewed for abuse of discretion); *Saldana v. INS*, 762 F.2d 824, 827 (9th Cir.1985), amended, 785 F.2d 650 (1986) (BIA's decisions concerning both motions to reconsider and motions to reopen should be reviewed for an abuse of discretion). Under the abuse of discretion standard, the decision of the BIA "will be upheld unless it is arbitrary, irrational, or contrary to law." *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir.1985) (quotation omitted). Where the BIA's denial of a motion to reopen is based on a question of law, however, it is reviewed de novo. *Gonzales v. INS*, 921 F.2d 236, 238 (9th Cir.1990), overruled on other grounds, *Butros v. INS*, 990 F.2d 1142 (9th Cir.1993).

## DISCUSSION

### A. Adequacy of the Summary Dismissal Procedures

Padilla claims that the INS failed to timely serve him with its motion to summarily dismiss his appeal. He also claims that because the BIA failed to provide him with notice of a possible summary dismissal, that dismissal violated his fifth amendment right to procedural due process.

■ We reject the first of his contentions. Padilla simply cannot establish that he was prejudiced by the INS's failure to properly serve him with its motion to dismiss: the INS sought to dismiss the appeal as frivolous under 8 C.F.R. § 3.1(d)(1–a)(iv) (1992), but the BIA independently dismissed his appeal under another provision, 8 C.F.R. § 3.1(d)(1–a)(i) (1992), because he failed to specify the bases for his appeal. *See Tejeda–Mata v. INS*, 626 F.2d 721, 725 (9th Cir.1980) (stating that a "[v]iolation of a regulation renders a deportation unlawful only if [it] prejudiced the interests of the alien") (internal quotation omitted), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). Thus, the action or inaction of the INS is beside the point.

■ His second contention has merit. He did not receive adequate notice of the potential for summary dismissal of his appeal. "[T]o survive judicial scrutiny, the BIA's procedures in summarily dismissing appeals must" not sink to the level of being "so arbitrary as to undermine the principles of due process." *Toquero v. INS*, 956 F.2d 193, 196 (9th Cir.1992). The Supreme Court has specifically held that due process requires administrative agencies not only to inform petitioners that proceedings have been instituted against them, but also to provide them with sufficient information to allow them to prepare and present objections to the agency's preliminary action or decision. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978); *see also* Administrative Procedure Act, 5 U.S.C. §§ 554(b) and (c), 557(c); *Hatch v. Federal Energy Reg. Comm'n*, 654 F.2d 825, 835 (D.C.Cir.1981); *Hess & Clark, Div. of Rhodia, Inc. v. Food &*

*Drug Admin.*, 495 F.2d 975, 983 (D.C.Cir. 1974); *Abercrombie v. Clarke*, 920 F.2d 1351, 1360 (7th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991).

■ Moreover, in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Court detailed the factors to be considered when there is a claim that an administrative procedure which affects private interests denies due process. Those are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.; see also, National Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 588 (9th Cir.1992) (setting forth and applying *Mathews* factors), *cert. denied,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993). We think it cannot be gainsaid that the private liberty interests involved in deportation proceedings are among the most substantial. *See, e.g., INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987) ("Deportation is always a harsh measure"); *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452–53, 89 L.Ed. 2103 (1945) ("Here the liberty of an individual is at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.... Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."); *Yamataya v. Fisher*, 189 U.S. 86, 101, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903) ("[N]o person shall be deprived of his liberty without opportunity ... to be heard.... Therefore, it is not competent ... arbitrarily to cause an alien who has entered the country ... to be taken into custody and deported without giving him all opportunity to be heard...."); *Yepes–*

*Prado v. INS*, 10 F.3d 1363, 1369 n. 11 (9th Cir.1993) ("Deportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a residence in this country.") (quotation omitted). Application of the remainder of the factors must await our analysis of the procedures used here. It is to them that we now turn.

The BIA Notice of Appeal Form (EOIR–26) used by Padilla asked, on the front of the form and immediately preceding the minimal space provided to state the basis for the appeal, that he "[s]pecify reasons for this appeal", told him to "continue on separate sheets if necessary" and notified him that "[i]f the factual or legal basis for the appeal is not sufficiently described the appeal may be summarily dismissed." On the reverse side of the form, the possibility of a summary dismissal is mentioned again, in language which tracks that in 8 C.F.R. § 3.1(d)(1–a)(i) (1993).

We have previously expressed our concern about the notice of appeal forms used in immigration cases. We have said the following about the instructions on an almost identical INS Notice of Appeal Form:[1]

> [W]e believe the instructions on the Notice of Appeal are less than clear. For example, on the reverse side of Form I–290A, the instructions warn that the BIA "may deny oral argument and summarily dismiss any appeal in any deportation proceeding in which (i) the party concerned fails to specify the reason for his/her appeal ..." The instructions do not set out, however, the specificity standard used by the BIA in deciding to summarily dismiss an appeal on this ground. In fact the form suggests that the alien need not go into much detail by providing only a three-inch space on which to state his claim of error. Moreover, the instructions indicate that the party is not required to file a brief, yet the BIA has developed the practice of considering the written brief in conjunction with

the Notice of Appeal in determining whether summary dismissal is appropriate.

> Were this a case that turned solely on the clarity of the instructions, we might be constrained to reach a different conclusion. More definite instructions may be necessary before an appeal is dismissed with prejudice on procedural grounds.

*Toquero*, 956 F.2d at 197 (citation omitted).

Even before *Toquero*, we warned the INS about the inadequacy of its Notice of Appeal Form:

> Form I–290A, the Notice of Appeal to the BIA, contains the potential for misleading the unwary. It requires the appellant to "*Briefly* state reasons for this appeal." (Emphasis supplied.) The instructions on the reverse side of the form provide that "The Board may deny oral argument and summarily dismiss any appeal in any deportation proceeding in which ... the party concerned fails to specify the reasons for his/her appeal ..." Appellants are informed that "a brief in support of or in opposition to an appeal is not required." The form then supplies less than three inches of space to provide these reasons for the appeal and does not invite the use of an additional piece of paper.

> Despite the apparently liberal standard implied by the instructions contained on Form I–290A the BIA has articulated fairly strict requirements for appellants trying to state their reasons for appeal....

> There is no indication on the face of Form I–290A or in the instructions on the reverse side as to the need for this level of specificity.

*Escobar–Ramos v. INS*, 927 F.2d 482, 484 (9th Cir.1991). In describing the INS's strict specificity requirements, we quoted from a decision of the BIA:

> It is ... insufficient to merely assert that the immigration judge improperly found that deportability had been established or

---

1. Notice of Appeal Form I–290A, to which we then referred, contains on its reverse side a summary dismissal warning identical to that on the reverse side of Notice of Appeal Form EOIR–26. However, unlike the form used by Padilla, it contains no summary dismissal warning on its

front side; instead, it advises petitioners to "[b]riefly, state reasons for this appeal" and then provides at the most three inches in which to state those reasons. Also, it does not say that pages can be added.

denied an application for relief from deportation ... [I]t should be clear whether the alleged impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards. Where a question of law is presented, supporting authority should be included, and where the dispute is on the facts, there should be a discussion of the particular details contested.

*Id.* (quoting *Matter of Valencia,* Interim Decision No. 3006, 2–3 (BIA 1986)).

The Tenth Circuit's decision in *Nazakat v. INS,* 981 F.2d 1146 (10th Cir.1992) also exuded discomfort with the idea that, taken alone, the Notice of Appeal Form adequately apprises immigrants of the relevant specificity requirements. The *Nazakat* court determined that the petitioner's due process rights were not violated because, at the conclusion of the deportation proceedings, the IJ warned him to prepare an adequate notice and told him: "Don't just say, 'I disagree.' As I explained to you ... you've got to put the reasons ... grounds, that an error was made, in this area, or that area, whatever grounds that you're appealing on. You have to be specific." *Id.* at 1148. In upholding a summary dismissal the court emphasized the fact that, "[a]t the conclusion of the hearing, the judge informed Nazakat of his right to appeal and emphasized the need to provide specific reasons in the Notice of Appeal." *Id.* at 1149. In the case at hand, the IJ, with some impatience, merely told Padilla that he had a right to appeal which he should exercise swiftly, without mentioning the specificity requirements for the Notice of Appeal.

Moreover, the regulations are themselves somewhat misleading about the level of specificity required. Of the three regulatory sections which address appeals and notices of appeal (8 C.F.R. §§ 3.3, 3.38, 242.21 (1993)), only one takes note of the specificity requirement. Title 8, Section 242.21(a) of the Code of Federal Regulations (1993) advises: "The reasons for the appeal shall be stated *briefly* in the Notice of Appeal ... failure to do so may constitute a ground for dismissal of the appeal by the Board." (emphasis added). This statement in no way captures the strict requirements of the BIA that the Notice of

Appeal "be clear whether the alleged impropriety in the decision lies with the ... interpretation of the facts or [the] application of legal standards ... present[ ] supporting authority ... and ... discuss[ ] ... the particular details contested." *Toquero,* 956 F.2d at 195 (internal quotation omitted). Rather it enjoins the immigrant to brevity.

We have previously decried the misleading nature of other portions of the regulations concerning BIA appeal requirements, particularly when they are read in conjunction with the Notice of Appeal forms. *See Vlaicu v. INS,* 998 F.2d 758, 760 (9th Cir.1993) (per curiam) (holding that since the notice of appeal form and regulations were misleading as to the required filings for and timing of appeals, the BIA must entertain the petitioner's otherwise untimely appeal); *Shamsi v. INS,* 998 F.2d 761, 763 (9th Cir.1993) (per curiam) (same). Here, as in *Vlaicu* and *Shamsi,* further confusion can be found in the regulatory sections. If one looks at any of the three appeals sections referenced above (8 C.F.R. §§ 3.3, 3.38, 242.21 (1993)), one finds a reference to Form I–290A, the one mentioned in our earlier decisions. However, the section on dismissals (8 C.F.R. § 3.1(d)(1–a)(i) (1993)) refers to Form EOIR–26, the one used here, not the one upon which appeal notice is to be given according to the other sections. Moreover, as mentioned previously, § 242.21 enjoins brevity, whereas § 3.1(d)(1–a)(i) prescribes specificity, and the other sections governing appeals say nothing to the purpose.

In both *Toquero* and *Escobar–Ramos,* this court expressed its discomfort with the misleading nature of the notice of appeal procedure utilized by the INS. Issues of exceeding importance—even life and death importance—may turn on an appeal to the BIA. Particularly when the alien is representing himself and has language difficulties, as is so often the case and *is* the case here, a high degree of clarity should be a part of the process accorded. Nothing precludes the INS from articulating in its own Notice of Appeal forms the detail that the BIA requires. It can be briefly stated, and has often been so stated in this court's opinions. *See, e.g., Toquero,* 956 F.2d at 195.

This case is the one described in *Toquero:* it turns on the "clarity of the instructions" alone. *Id.* at 197. The Notice of Appeal Form we deal with here differs from the one in *Toquero* in only two respects of any significance. The space on the form is 1.75 inches rather than 3 inches, and the petitioner is told that additional pages can be attached, if necessary. Still and all, it is just as misleading and unhelpful as the one in *Toquero.* Because minimal space is provided for petitioners to state their reasons for appeal, the form creates the misimpression that most petitioners are expected to state those reasons within the space of 1.75 inches and can do so with sufficient clarity. That simply is a normal way to approach forms—it is reasonable to believe that, in the majority of cases, one *can* say enough in the space provided. The form also provides a space for checking that the alien will not file a "separate written brief or statement." That, we think, lends further impetus to the feeling that more is not really required. However, it is highly unlikely that an alien who has been denied asylum will be able to state his case with the specificity required by the BIA in the 1.75 allotted inches. We expect that no lawyer would even attempt it. In other words, what these forms suggest is the norm is in fact the extraordinary case.

We return then to the factors in *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. We have already noted the weight of the alien's interest. It is pellucid that the risk of erroneously depriving him of that interest is high, when BIA and Court of Appeals review will be cut off if the alien misunderstands the confusing signals given him by the appeal form, the applicable regulations and their interpretations. We also think that a less misleading set of forms, regulations and rulings or a procedure that gives the alien advance warning before the harsh dismissal ax is wielded against him would have great value. Finally, the government could imple-

ment the needed changes without suffering any significant fiscal or administrative burdens. Adoption of better forms, or better accompanying explanations, or a simple pre-dismissal notice, or all of these should certainly be easily attainable. We have not seen or heard anything to the contrary.

We have twice hinted that the appeal notice forms used by the INS are deficient. *Toquero,* 956 F.2d at 197; *Escobar–Ramos,* 927 F.2d at 484. We now hold that the concatenation of EOIR–26, the BIA's strict Notice of Appeal requirements, and the failure to give any advance warning before an appeal is dismissed, can result in a violation of the due process rights of the alien.[2] It did so here.[3]

## B. The First Motion to Reopen and Reconsider

A motion to reopen must be based upon new material evidence which was not available and which the alien could not have discovered or presented at the prior hearing. 8 C.F.R. § 3.2 (1993); *Saldana,* 762 F.2d at 826; *see also Doherty,* —— U.S. at ——, 112 S.Ct. at 726 (motions to reopen must be based on "matter which could not reasonably have been previously adduced"). On the other hand, a motion to reconsider need only "state the reasons upon which the motion is based" and "be supported by such precedent decisions as are pertinent"; it need not be based on allegations of new fact or precedent. 8 C.F.R. § 3.8(a) (1993); *Saldana,* 762 F.2d at 826.

▪▪▪ Padilla sought to reopen deportation proceedings "to submit evidence explaining the nature of the assistance provided" him in drafting the declaration in support of his asylum application, and to reconsider the BIA's summary dismissal of his appeal "[s]ince the . . . decision did not consider the merits of [his] claim to asylum." The BIA

---

**2.** Although the constitutionality of the use of Notice of Appeal Form I–290A is not before us, since Padilla did not use it, we note that the constitutionality of the use of that form, in combination with the strict Notice of Appeal requirements and the absence of any warning before an appeal is dismissed on specificity grounds, is nonetheless called into question by our holding.

**3.** Because we reverse the BIA's summary dismissal on the basis of the inadequacy of its notice of appeal procedures, we do not reach the issue of whether the BIA properly applied its own specificity requirements in ordering the dismissal.

did not err in denying the motion to reopen on the ground that Padilla had failed ·to present new material evidence. He could easily have produced more evidence at the hearing concerning the circumstances under which his declaration in support of his asylum application was drafted; indeed, he did testify at the hearing, albeit not artfully, about how it was drafted. The evidence he sought to introduce on the motion to reopen was not new at all. Moreover, the BIA properly rejected his motion to reconsider on the ground that he failed to demonstrate how its original decision to summarily dismiss was in error. He merely reargued the merits of his asylum claim, without demonstrating how the summary dismissal itself was improper.

## CONCLUSION

When an alien faces the threat of deportation the stakes are high. If he loses, he will be removed from this country—a promised land for many. He may face deprivation, torture or even death when he is returned to his homeland. He may also lose contact with his family and friends.

Of course, none of this means that aliens need not follow our laws and procedures. They must. But we should give them a fair chance to do so. Immigration laws and regulations are exceedingly complex, and the burdens faced by the BIA are far from light. Nevertheless, due process requires that aliens who seek to appeal be given a fair opportunity to present their cases.

We hold that when EOIR–26, the BIA's standards of specificity, and the practice of dismissing appeals without notice are linked, that concatenation is so misleading that it can result in a denial of due process to the alien. In particular, it denied due process to Padilla when those elements combined to deprive him of an opportunity to present his appeal to the BIA. Under the circumstances, the BIA should not have dismissed his petition as insufficient without giving him notice.

Petition for review of the decision to dismiss and denial of the second motion for reconsideration GRANTED; petition for review of the denial of the first motion to reopen and reconsider DENIED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

Relying upon what it calls the "normal way to approach forms," the majority finds that the *absence* of a large blank space on the printed notice of appeal form deprived Padilla of procedural due process guaranteed by the United States Constitution. Unfortunately, it is the *presence* of a large blank space in the reasoning of its opinion which leads the majority to such a bizarre conclusion. Because I believe that form EOIR–26 provided reasonable notice to Padilla, I must dissent from that part of the majority's opinion denominated "A. Adequacy of the Summary Dismissal Procedures"; I concur in the remainder.

I

The Board of Immigration Appeals ("BIA") requires a petitioner appealing an adverse immigration judge ("IJ") decision to state the specific grounds for the appeal. A petitioner may not merely assert that an IJ erred in denying an application for relief from deportation. Instead, as the majority observes, he or she must identify the IJ's alleged error and discuss either the legal standards that the IJ contravened or the particular details of any factual error. *Matter of Valencia,* 19 I. & N.Dec. 354 (BIA 1986).

Form EOIR–26 adequately alerts petitioners to this "specificity" requirement. On its front, the form instructs a petitioner to "[s]pecify [the] reasons for this appeal and continue on· separate sheets if necessary. If the factual or legal basis for the appeal is not sufficiently described the appeal may be summarily dismissed." This statement is followed by a blank area approximately 1.75 inches in length. On the reverse side, the form again cautions: **"Summary dismissal of appeals.** The BIA may ... summarily dismiss any appeal in which ... the party concerned fails to specify the reasons for his/her appeal on the [other] side of this form...." [Bold in original].

These statements reasonably satisfy the government's due process obligation to notify a petitioner of the BIA's specificity requirement. Due process requires that "[t]he BIA's procedures in summarily dismissing appeals must not be so arbitrary as to undermine the principles of due process." *Toquero v. INS*, 956 F.2d 193, 196 (9th Cir.1992). The BIA thus must provide petitioners with adequate notice of the steps that they must take to avoid summary dismissal. *See id.* at 197; *Nazakat v. INS*, 981 F.2d 1146, 1148–49 (10th Cir.1992). This "right to adequate notice simply requires that [a] proposed form of notification be reasonably certain to inform those affected" of their obligations. *Vancouver Women's Health Collective Soc. v. A.H. Robins Co. Inc.*, 820 F.2d 1359, 1364 (4th Cir.1987). Form EOIR–26 meets this standard. It tells a petitioner to specify the reasons for his or her appeal, including all legal and factual bases. It then twice warns a petitioner of the consequences of a failure to comply with this directive.

The only case to address the sufficiency of notice in immigration appeal procedures, *Nazakat*, 981 F.2d 1146, confirms this conclusion. In *Nazakat*, the BIA summarily dismissed an appeal because the petitioner's I–290A form was insufficiently specific. The petitioner asserted that the dismissal violated procedural due process. The Tenth Circuit disagreed, observing that an immigration judge had:

> warned the petitioner to prepare an adequate Notice of Appeal: "Don't just say, 'I disagree.' As I explained to you ... you've got to put the reasons.... grounds that an error was made, in this area, or that area, whatever grounds that you're appealing on. You have to be specific."

*Id.* at 1148 (ellipses in original).

Form EOIR–26 gives the same instructions to a petitioner. Its directives and warnings of summary dismissal are equivalent to, if not greater than, the *Nazakat* IJ's

warning that Nazakat's appeal had to be "specific" and had to state his reasons for appealing.[1] Form EOIR–26 does not violate the Constitution.

## II

Curiously, the majority finds greatest fault with form EOIR–26 not because of what it says or does not say, but because of an absence of empty space.

Form EOIR–26 provides a blank area 1.75 inches in length beneath its instructions regarding a petitioner's statement of reasons for his or her appeal. The majority finds this space so misleading to immigrants that it denies them due process. The majority explains that, "[b]ecause minimal space is provided for petitioners to state their reasons for appeal, this creates the misimpression that most petitioners are expected to state those reasons within the space of 1.75 inches and can do so with sufficient clarity. That simply is a normal way to complete forms...." [Opinion at 3433.]

This view is faulty because petitioners are not, in fact, limited to the 1.75–inch area. Form EOIR–26 plainly informs petitioners that they may continue onto additional sheets of paper if necessary. Petitioners thus are not restricted to a "minimal space" to complete the form.

The majority nevertheless suggests that, because form EOIR–26 merely gives petitioners the *option* to continue on to additional pages (as well as the related option to file, or not file, a brief), it lulls petitioners into believing that they need not do so, regardless of the specific issues involved in their appeals. [Opinion at 3433.] This view presumes that petitioners will ignore the form's explicit directive to specify the reasons, including all legal and factual bases, for an appeal.

---

1. The majority misreads *Nazakat* to reach the opposite conclusion, asserting that *Nazakat* "exuded discomfort with the idea that, taken alone, the Notice of Appeal Form adequately apprises immigrants of the relevant specificity requirements." [Opinion at 3431.] This analysis of the gestalt of the Tenth Circuit's opinion is simply wrong. Nowhere in *Nazakat* does the Tenth Circuit criticize or express dissatisfaction with form I–290A. Instead, without mentioning the instructions on form I–290A, the court simply held that an IJ's warning to Nazakat was sufficient notice.

I see no reason to make this presumption. It seems much more likely that petitioners, who are one step closer to deportation after losing before an IJ, will take the form's directive seriously and will write to whatever length they deem necessary to comply with it. Consequently, if the option to attach additional pages to form EOIR–26 has any effect on petitioners' behavior, it is to encourage, rather than to deter, the inclusion of details explaining the basis for an appeal.

Further, to the extent that the majority relies on *Toquero,* 956 F.2d at 197, and *Escobar–Ramos v. INS,* 927 F.2d 482, 484 (9th Cir.1991), to find form EOIR–26 defective, such reliance is misplaced. In both cases, this court signaled concern that form I–290A provided insufficient notice of specificity requirements while nevertheless affirming BIA action.

These cases are distinguishable from the present one because form EOIR–26 provides better notice than form I–290A. For example, instructions and an accompanying warning of summary dismissal are more prominent on form EOIR–26. Form EOIR–26 states, on its front, that failure to describe the basis of the appeal sufficiently may lead to summary dismissal. Form I–290A, in contrast, buries the same warning on its reverse side.

Form EOIR–26 also prompts a petitioner to write his or her reasons for appeal "on separate sheets if necessary." As explained above, the form thus encourages a petitioner to elaborate on the reasons for an appeal. Form I–290A does the opposite. Not only does it fail to suggest the attachment of additional pages, but it also instructs a petitioner "[b]riefly" to state the reasons for his or her appeal.

Rather than acknowledge the improvements made to form EOIR–26 in these important respects, the majority focuses on the fact that form EOIR–26 contains a smaller blank space than form I–290A, which provides a 3–inch area for identifying the reasons for an appeal. [Opinion at 3433.] As explained above, however, the "concatenation" of form EOIR–26 in this manner does not mislead a petitioner into limiting his or her reasons for appeal to a 1.75–inch space where such a limitation would be inappropriate.

Consequently, I must conclude that form EOIR–26 does not mislead petitioners nor deprive them of due process.[2]

## III

Padilla did not comply with the instructions on form EOIR–26. In his two-sentence explanation of his appeal, Padilla stated only that he has fled his home country because he had been persecuted and that he would be mistreated or killed if he returned. He nowhere identified what errors, factual or legal, the IJ purportedly made and never described the facts underlying his objections to the IJ's decision.

I thus would hold that the BIA's summary dismissal of Padilla's appeal did not violate Padilla's procedural due process rights. While I might agree with the majority's assessment that the BIA should continue to improve its forms, the Constitution does not require the BIA to make improvements on a form that already provides at least minimal satisfactory notice. *See Vancouver,* 820 F.2d at 1364.

I thus respectfully dissent.

**2.** The majority also observes that Immigration and Naturalization Service ("INS") regulations regarding the appeal requirements for forms EOIR–26 and I–290A are confusing. Padilla, however, does not claim that he was misled by, or has ever read, these regulations. In fact, at oral argument he made the opposite contention that pro se immigrants cannot be expected to be familiar with the regulations and decisions of the INS and BIA. Further, the cases cited by the majority, *Vlaicu v. INS,* 998 F.2d 758 (9th Cir. 1993), and *Shamsi v. INS,* 998 F.2d 761 (9th Cir.1993), are inapposite. In those cases the court remanded to the BIA because *both* INS forms and INS regulations misled petitioners into believing that they had timely appealed. Here, however, form EOIR–26 simply is not misleading.