47 F.3d 1176
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maroun TABET, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 Nos. 93-70630, 94-70050.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1995.
Decided Feb. 24, 1995.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, No. Atm-ejy-pgb.
 BIA
 PETITIONS DENIED.
 Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maroun Tabet, a native and citizen of Lebanon, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an immigration judge's ("IJ") denial of his application for registry pursuant to section 249 of the Immigration and Nationality Act, 8 U.S.C. Sec. 1259. Tabet also petitions for review of the BIA's subsequent denial of his motion to reopen deportation proceedings to allow him to apply for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1254(a)(1). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105(a)(1), and we deny Tabet's petitions.
 
 
 3
 The BIA both affirmed the IJ's denial of Tabet's application for registry and denied Tabet's motion to reopen deportation proceedings to consider suspension of deportation on the ground that Tabet did not warrant a discretionary grant of relief. The granting of relief in the form of registry, as with adjustment of status, is within the discretion of the Attorney General. We review the BIA's denial of discretionary relief from deportation for abuse of discretion. Rashtabadi v. INS, 23 F.3d 1562, 1566 (9th Cir.1994) (citing Foti v. INS, 375 U.S. 217, 228 (1963)). Similarly, we review the BIA's denial of a motion to reopen for abuse of discretion. Padilla-Agustin v. INS, 21 F.3d 970, 973 (9th Cir.1994). We will not disturb the decision of the BIA unless it is arbitrary, irrational, or contrary to the law. Id.
 
 
 4
 * Registry
 
 
 5
 Tabet contends the BIA abused its discretion by failing adequately to consider Tabet's positive equities and by reducing the weight given to those equities because they were acquired during the pendency of his deportation proceedings. We disagree.
 
 
 6
 First, the BIA expressly stated in its decision that it was "mindful of the equities the respondent possesses in this country, most notably his employment and his family ties." Second, the BIA did not abuse its discretion in considering the fact that most of Tabet's equities had accrued during the pendency of his deportation proceedings.
 
 
 7
 The United States Supreme Court addressed this issue in INS v. Rios-Pineda, 471 U.S. 444 (1985), stating:
 
 
 8
 The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites. One illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible. The Attorney General can, in exercising his discretion, legitimately avoid creating a further incentive for stalling by refusing to reopen suspension proceedings for those who became eligible for such suspension only because of the passage of time while their meritless appeals dragged on.
 
 
 9
 Id. at 450 (citations omitted).
 
 
 10
 In the instant case, Tabet returned to the United States on September 10, 1983, following a nine month absence. On April 19, 1985, Tabet was issued an Order to Show Cause. And on September 30, 1985, at a hearing before an IJ, Tabet admitted the allegations in the Order to Show Cause and conceded deportability. It was not until January 18, 1987, twenty-one months after the issuance of the Order to Show Cause, that Tabet married his current United States citizen wife. Furthermore, his United States citizen son was not born until October 19, 1989, over five years after the commencement of deportation proceedings. The BIA clearly had the authority under Rios-Pineda to discount Tabet's positive equities which accrued after the commencement of deportation proceedings.
 
 
 11
 In addition, the BIA stated that the primary reason Tabet was not entitled to discretionary relief was that he "repeatedly flouted the immigration laws of this country." The BIA specifically noted Tabet's two prior attempts to circumvent the immigration laws by entering into fraudulent marriages.
 
 In Rios-Pineda, the Supreme Court stated:
 
 12
 While all aliens illegally present in the United States have, in some way, violated the immigration laws, it is untenable to suggest that the Attorney General has no discretion to consider their individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations.
 
 
 13
 Id. at 451. Therefore, the BIA did not abuse its discretion when it rejected Tabet's application for registry on the basis of his repeated violations of immigration laws.
 
 II
 Suspension of Deportation
 
 14
 Tabet also contends the BIA abused its discretion in denying his motion to reopen deportation proceedings to consider suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1254(a)(1). We disagree.
 
 
 15
 In denying Tabet's motion to reopen, the BIA again considered the positive equities favoring Tabet. The BIA noted the hardship which deportation would cause Tabet, his United States citizen wife and children, and his permanent resident father. The BIA also considered the turbulent conditions which existed in Lebanon and the fact that suspension of deportation was the only form of relief from deportation available to Tabet.
 
 
 16
 The BIA relied on three negative factors in support of its denial of Tabet's motion. First, Tabet's family would be able to travel with him to Lebanon once they had left the United States and Tabet's wife was a Lebanese national and was familiar with the language and customs of that country. Second, the equities favoring Tabet accrued after the commencement of deportation proceedings "when [Tabet] was well aware that his continuing ability to remain in this country was in grave doubt." Third, and most significant, Tabet repeatedly disregarded and violated immigration laws.
 
 
 17
 For the reasons already discussed, the BIA's consideration of these factors was appropriate and its denial of discretionary relief was neither an unreasoned nor arbitrary exercise of discretion. Furthermore, Tabet failed to show that any of the BIA's factual findings were clearly erroneous.
 
 
 18
 Finally, Tabet's arguments that (1) the BIA erred in failing to consider the fact that his prior fraudulent marriages would prevent him from ever receiving a visa to reenter the United States as a favorable equity, and (2) that the BIA abused its discretion in denying Tabet's motion to reopen to consider an application for suspension of deportation where it had previously granted Tabet's motion to reopen to consider an application for registry are meritless and do not warrant further discussion.
 
 III
 
 19
 Because the BIA appropriately exercised its discretion, Tabet's petitions for review of the decisions of the BIA affirming the IJ's denial of registry and denying Tabet's motion to reopen deportation proceedings for consideration of suspension of deportation are
 
 
 20
 DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3