**Mauro VARGAS–GARCIA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 00–71019.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2002.

Filed April 25, 2002.

Peter R. Afrasiabi, Chapman University School of Law, Orange, CA; Melanie J. Boyer (Admitted Student, argued) and Rosa E. Sahagun (Admitted Student, argued), for the Petitioner; Susan E. Hill, Law Offices of Susan E. Hill, Los Angeles, CA, for the Petitioner.

Heather Phillips, Office of Immigration Litigation, (argued); Stephen J. Flynn, Office of Immigration Litigation, Washington, DC, for the respondent.

Before: FERNANDEZ and RAWLINSON, Circuit Judges, and REED, JR.,* District Judge.

## OPINION

FERNANDEZ, Circuit Judge.

Mauro Vargas–Garcia, a citizen of Mexico, petitions for review of the decision of the Board of Immigration Appeals which summarily dismissed his appeal of the Immigration Judge's ruling denying him suspension of deportation. *See* INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (repealed 1996). He argues that the BIA should not have summarily dismissed his appeal without notice. We grant the petition.

## BACKGROUND

Vargas illegally entered the United States in 1988, and has been here ever since. He is not married, but he lives with the mother of his child and supports both of them. He sought suspension of deportation at his hearing before the IJ in May of 1998, because, as he explained, he had a United States citizen daughter whom he supported, and it would be a hardship if he were returned to Mexico under the circumstances. The facts were not well developed—the whole of the testimony covers only about six pages of transcript. At the end of the hearing, the IJ issued a four-page decision, which denied suspension on the basis that Vargas had not shown extreme hardship.

Vargas appealed to the BIA and set forth the following as the basis of that appeal: [1]

The immigration law erred as a matter of law when he denied my application for cancellation of removal under section 240(B)(1)(D) of the Immigration and Naturalization Act (INA), as amended, by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (September 30, 1996). Under new section 240 A(1)(D), I was supposed to establish that my removal would result in "exceptional and extremely unusual" hardship to my child. I support my U.S. citizen daughter and we are very close so I think any reasonable person would agree that if I were to return to my country without her, her life would be much more difficult because her mother would probably need to apply for public benefits to support her and she would need to be raised without a father. I consider the judge interpreted the law in a wrong manner because I think any reasonable person would call what my child would suffer without me "exceptional extreme hardship".

As to the documents proving my physical presence in the United States I was not given any objective reason of why they were being denied or why they lacked credibility. As to my moral character that was not an issue for I have not committed any crime in any part of the world or being arrested. Therefore I am asking you to review my case for I consider the interpretation of the law that the Immigration Judge used was wrong.

Over two years later, the BIA dismissed the appeal because, it said, the "allegations of error" lacked specificity. Vargas then filed his petition for review.

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. The various spelling errors are in the original.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide whether the summary dismissal of Vargas' appeal to the BIA denied him due process of law. *See* 8 U.S.C. § 1105a(a)(1), *repealed by* Section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996); *Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir. 2001). We have made it clear that, in general, we review summary dismissals for the purpose of determining whether they are "appropriate," but we have not further articulated the standard of review. *See Castillo–Manzanarez v. INS,* 65 F.3d 793, 794 (9th Cir.1995). Nor need we do so here.

## DISCUSSION

Vargas argues that the combination of the defective Notice of Appeal Form— EOIR 26—and the summary dismissal without any notice was sufficient to deny him due process. We agree.

We have been forced to deal with EOIR 26, and its predecessors, for over 10 years.[2] We extensively vetted it and pointed out its defects in *Padilla–Agustin v. INS,* 21 F.3d 970 (9th Cir.1994), *overruled on other grounds by Stone v. INS,* 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). Rather than try to paraphrase what we said there, we will quote *Padilla–Agustin* at some length, but we should first note that before it was decided, we had already expressed disquiet about the fact that the BIA's decisional law sets out a rather stern specificity standard, while the Notice of Appeal forms do not do so and instead even suggest that not much

detail is required. *See Toquero,* 956 F.2d at 197. At that earlier time, we opined that if we had been dealing with a case "that turned solely on the clarity of the instructions" we might have held in favor of the alien. *Id.; see also Escobar–Ramos,* 927 F.2d at 484–85. Then, in *Padilla–Agustin,* 21 F.3d at 977, we said:

This case is the one described in *Toquero:* it turns on the "clarity of the instructions" alone. The Notice of Appeal Form we deal with here differs from the one in *Toquero* in only two respects of any significance. The space on the form is 1.75 inches rather than 3 inches, and the petitioner is told that additional pages can be attached, if necessary. Still and all, it is just as misleading and unhelpful as the one in *Toquero.* Because minimal space is provided for petitioners to state their reasons for appeal, the form creates the misimpression that most petitioners are expected to state those reasons within the space of 1.75 inches and can do so with sufficient clarity. That simply is a normal way to approach forms—it is reasonable to believe that, in the majority of cases, one *can* say enough in the space provided. The form also provides a space for checking that the alien will not file a "separate written brief or statement." That, we think, lends further impetus to the feeling that more is not really required. However, it is highly unlikely that an alien who has been denied asylum will be able to state his case with the specificity required by the BIA in the 1.75 allotted inches. We expect that no lawyer would even attempt it. In other words, what these forms suggest is the norm is in fact the extraordinary case.

---

2. *See, e.g., Toquero v. INS,* 956 F.2d 193, 194 (9th Cir.1992); *Escobar–Ramos v. INS,* 927 F.2d 482, 484 (9th Cir.1991).

\* \* \* \*

We have twice hinted that the appeal notice forms used by the INS are deficient. We now hold that the concatenation of EOIR 26, the BIA's strict Notice of Appeal requirements, and the failure to give any advance warning before an appeal is dismissed, can result in a violation of the due process rights of an alien. It did so here.

*Id.* (citations and footnotes omitted); *see also Castillo–Manzanarez*, 65 F.3d at 795–96. Has anything changed since *Padilla–Agustin?* Not really.

There have been some cosmetic changes in the form, but that is all. The form still indicates that a "separate written brief" is not required.[3] The blank space in the form is now 4.25 inches, rather than the 1.75 inches (or *Toquero*'s 3 inches) that it had before. Moreover, it now says: "The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice...." But at the time of *Padilla–Agustin*, the form said that " '[i]f the factual or legal basis for the appeal is not sufficiently described the appeal may be summarily dismissed.' " *Padilla–Agustin*, 21 F.3d at 975. The form still does not tell the alien that the information will not be sufficient unless it makes clear whether any claimed "impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards." *In re Valencia*, 19 I. & N. Dec. 354, 355 (1986). It does not tell him that "[w]here a question of law is presented, supporting authority should be included, and where the dispute is on the facts, there should be a discussion of the particular details con-

tested." *Id.* Moreover, it does not state that "[w]here eligibility for discretionary relief is at issue," the notice should indicate "whether the error relates to grounds of statutory eligibility or to the exercise of discretion." *Id.; see also Escobar–Ramos*, 927 F.2d at 484 (quoting *Valencia* ). In other words, EOIR–26 still fails to tell the alien, especially a pro se alien like Vargas, that what is really required is what amounts to a true legal brief complete with reference to authorities—statutes, regulations, cases, etc. Nor does it inform him that his contentions are "best presented in a brief," and that a brief "may be essential to an adequate presentation of the appeal" in some cases. *Valencia*, 19 I. & N. Dec. at 355.

Were there any doubt about the rigidity with which the BIA enforces its rule, that is dispelled by this case. We hark back to what Vargas actually wrote in this appeal on a very lean transcript and from a decision where the IJ saw no need to say more than a few brief words. Vargas stated what was wrong—the IJ failed to find extreme hardship. He alluded to why that was so: "any reasonable person" would call the facts that he had set forth "exceptional extreme hardship." That can be read as suggesting that the IJ abused his discretion. *See Lopez–Galarza v. INS*, 99 F.3d 954, 960 (9th Cir.1996); *Tukhowinich v. INS*, 64 F.3d 460, 463 (9th Cir.1995). And, of course, Vargas pointed to some facts upon which he based that claim—he had a child, who would not have her father there and would not be supported, and she and her mother would have to apply for

---

**3.** It adds that if you indicate you will file one, a failure to do so can itself lead to summary dismissal. *See also* 8 C.F.R. § 3.1(d)(2)(D). Thus, the alien is told of a further danger if he is not certain whether he wants to rely on what he has stated in the notice of appeal or file an additional brief. In a sense, he is safer if he declines the briefing option; at least he then ducks one summary dismissal possibility. Vargas indicated that he would not file a separate brief.

public benefits to survive.[4] In other words, Vargas gave the BIA much more information than did the petitioners in many other cases which have come before us. *See Castillo–Manzanarez,* 65 F.3d at 794 (mere bald generalizations, like "not supported by substantial evidence," and "met burden of proof"); *Padilla–Agustin,* 21 F.3d at 972 ("I was persecuted," and "I'll be—mistreated or killed."); *Toquero,* 956 F.2d at 194 ("evidence presented established ... extreme hardship"); *Reyes–Mendoza,* 774 F.2d 1364 (9th Cir.1985) ("[w]rongful denial of suspension of deportation") Still, that was not good enough because, despite the general language of . EOIR–26, the BIA's stringent standards for specifying the nature of the error and presenting supporting authorities were not met. Actions speak louder than words, and the actions of the BIA in this case demonstrate the inadequacy of the procedures which were used here.

## CONCLUSION

·We conclude, as we have before, that "when EOIR 26, the BIA's standards of specificity, and the practice of dismissing appeals without notice are linked, that concatenation is so misleading that it can result in a denial of due process to the alien." *Padilla–Agustin,* 21 F.3d at 978. It denied Vargas due process because "those elements combined to deprive him of an opportunity to present his appeal to the BIA." *Id.*

As is proper, we have ever refrained from setting forth rigid standards for administrative appeals to the BIA; we also do so now. But, lest we see one allotrope of EOIR–26 after another because we leave the BIA fossicking about for the principle which animates this and other of our decisions, perhaps we should say a few more words. If the BIA continues to hold out the "benefit" of its no-brief-required rule, it would surely ameliorate the problems we have seen if the BIA gave notice to aliens who have not come up to snuff, rather than briskly issuing summary dismissals. That might well be a much better apotropaion than the BIA's past tinkering with EOIR–26 has proven to be.

Petition GRANTED; case REMANDED for further proceedings.

---

**4.** It does not seem that all of those facts were before the IJ, but that was not the basis of the dismissal.