

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2009

# Lim v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Lim v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1787.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1787

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-030** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1405

DJAN MEN LIM,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-204-373)
Immigration Judge: Honorable Polly Webber

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 25, 2009

Before: FUENTES, WEIS AND GARTH, Circuit Judges

(Opinion filed: March 3, 2009)

OPINION

PER CURIAM.

Djan Men Lim petitions for review of a Board of Immigration Appeals

("BIA") decision dismissing his appeal of the Immigration Judge's ("IJ") decision denying his applications for relief from removal. We will deny the petition for review.

Lim is a native and citizen of Indonesia who was admitted to the United States in 2001 as a visitor. In 2003, the Immigration and Naturalization Service issued a notice to appear charging that Lim was subject to removal because he remained here longer than permitted. Through counsel, Lim conceded that he was removable as charged. He applied for asylum, withholding of removal, relief under the Convention Against Torture, and voluntary departure. The IJ determined that Lim's asylum application was untimely and considered his other requests for relief.

Lim, who is Chinese, testified that he helped his parents in their store, which was attached to their home in Kalimantan. Lim stated that there were conflicts where he lived between two ethnic groups, the Madurese and the Dayaks. Lim testified that in November 1997 a group of men, who he believed were Madurese, looted his family's store and burned down the property. Lim's family was able to flee the building. Lim's family reported the incident to the police, but Lim stated that the police took no action because the police believed that the incident was a common riot. Lim's lawyer asked Lim why he thought his family's store was damaged, and Lim replied that many of the stores in the area also were looted.

After this incident, Lim's parents lived with relatives in Kalimantan, and Lim went to Jakarta for four months to work in a store. Lim stated that two or three times

a month different people in street gangs demanded money from him on his way home from work. Lim stated that these individuals would hit him if he refused their demands, and that he was hit several times even though he had given them money. Lim was never injured, and he did not have to seek medical treatment after these incidents. Lim stated that these individuals made ethnic slurs, and that he believed he was approached because he is Chinese. He did not report the incidents to the police because he did not believe anything would be done.

From April 1998 until February 2001, Lim lived and worked in Taiwan. His father remained in Kalimantan. Lim's mother had passed away. During a visit to Indonesia, a taxi driver stole Lim's wallet at knife point en route from the airport to his father's home. Lim testified that he believed that he was robbed because the driver probably thought he had a lot of money because he was returning from overseas. Lim again did not report the incident to the police because he did not believe anything would be done.

Lim stated that he came to the United States in 2001 in order to seek asylum because he believed that it was safer here. He explained in his written statement that he did not apply for asylum because he learned that, if asylum was denied, he would have to return to Indonesia. In 2005, Lim married a friend from Indonesia. They have a child, who is a United States citizen. Lim's wife has no legal status here. Lim does not want to return to Indonesia because he is afraid of riots similar to those that occurred in 1997.

3

The IJ found Lim credible and stated that he had a subjective fear of returning to Indonesia based on the 1997 riots resulting in the loss of his family's home. Although the IJ recognized that the loss of a home is an extreme event, the IJ stated that Lim's family was not targeted, but rather the rioters went on a rampage through a section of small businesses. The IJ noted that there was no evidence that the rioters caused the damage on account of the store owners' race, religion, or other protected ground, and that there was no evidence of strife between the Madurese and Chinese Indonesians. The IJ concluded that this isolated incident did not constitute past persecution. The IJ further found that the robberies that occurred in the taxi and when Lim lived in Jakarta did not rise to the level of persecution. The IJ noted that the incidents were unrelated, that the robberies were criminal acts, and that Lim was not physically harmed.

The IJ also found no basis to conclude, based on these events, that Lim would be singled out for persecution in the future. The IJ noted that Lim's family remains in Indonesia, and they have not suffered any harm. The IJ also concluded that the evidence did not establish a pattern or practice of persecution of Chinese Indonesians in Indonesia.[1] Finally, the IJ concluded that relief was not warranted under the Convention Against Torture, noting that Lim's concerns did not seem to be the result of any

---

[1] In considering Lim's claim of future persecution, the IJ, who usually presided in the Ninth Circuit, also discussed the "disfavored group analysis" applied in that jurisdiction. The IJ recognized that this Court has rejected this analysis. See Lie v. Ashcroft, 396 F.3d 530, 538 n.4 (3d Cir. 2005). The IJ concluded that Lim would not be entitled to relief even if the disfavored group analysis applied.

government action or acquiescence, that the government appeared to be trying to rectify the ethnic animosities in Indonesia, and that there was no evidence that Lim had been tortured. The IJ granted voluntary departure.

The BIA summarily dismissed Lim's appeal. The BIA stated that Lim, through counsel, had submitted a boilerplate brief, had not contested the finding that Lim's asylum application was time-barred, did not appeal from the denial of CAT protection, and had not identified a specific error in the IJ's determination that he failed to demonstrate his eligibility for withholding of removal. The BIA further stated that, upon review of the record, it was not persuaded that the IJ's ultimate resolution of the case was in error. The BIA granted voluntary departure. Lim, through new counsel, filed this petition for review.

Lim argues that the BIA's summary dismissal violated his due process rights. Lim asserts that the BIA's notice of appeal form is defective because it fails to inform an alien of the BIA's strict specification requirements when filing an appeal. Lim further asserts that he received no advance warning before the summary dismissal. Lim relies on Vargas-Garcia v. INS, 287 F.3d 882 (9th Cir. 2002), and Castillo-Manzanarez v. INS, 65 F.3d 793 (9th Cir. 1995), where the court of appeals held that aliens' due process rights were violated when the BIA summarily dismissed appeals for failing to adequately specify the reasons for the appeals in the appeal forms. The court explained that the appeal form failed to inform the aliens of the strict specificity requirements contained in

5

BIA cases, and that the limited space provided on the form suggested that only a brief explanation was required. Vargas-Garcia, 287 F.3d at 884-85. Castillo-Manzanarez held that there was a due process violation where the alien was represented by counsel. Castillo-Manzanarez, 65 F.3d at 796.

We have not addressed this issue. Even assuming that we would have concluded that there was a due process violation in the cases Lim relies upon, Lim's case is distinguishable. Unlike Vargas-Garcia and Castillo-Manzanarez, the BIA did not dismiss Lim's appeal based solely on his filing of an inadequate notice of appeal form. Lim also filed a brief and had an opportunity to further explain the basis of his appeal. Lim's brief, however, only presented a summary of the law and did not discuss the facts of his case. Because Lim did not rely on his filing of the notice of appeal form to present his appeal to the BIA, his due process argument based on Vargas-Garcia and Castillo-Manzanarez is without merit.

Lim further contends that the regulations relied upon by the BIA in summarily dismissing his appeal do not apply to his case because he filed a brief in addition to his notice of appeal. Lim is correct that the regulations cited by the BIA address the requirements for the notice of appeal form, and provide that a party taking an appeal must identify the reasons for the appeal in the form in order to avoid summary dismissal. See 8 C.F.R. §§ 1003.1(d)(2)(i)(A), 1003.3(b). Lim's argument might be persuasive if his brief had addressed the reasons for his appeal. Lim's brief, however, did

not do so. Because Lim's brief provided no more information about his appeal than what was stated in the notice of appeal form, Lim has not shown that BIA erred.

Lim also has not shown that the BIA erred in deciding that he failed to identify any specific error in the IJ's decision on his withholding of removal claim. Lim only stated in his notice of appeal form that the IJ's decision was unsupported by the facts and the law, and that he established that he would more likely than not suffer persecution if returned to Indonesia. The BIA requires an alien to discuss the particular details contested where the dispute is on the facts and to include supporting authority where a question of law is presented. See Matter of Valencia, 19 I&N Dec. 354 (BIA 1986) (discussing specificity requirements for notice of appeal). In his brief to the BIA, Lim again stated, without explanation, that he provided evidence of a well-founded fear of persecution.

Lim also asks us to remand this matter to the BIA for consideration of an ineffective assistance of counsel claim pursuant to Matter of Lozada, 19 I&N Dec. 637 (BIA 1988). Although the BIA noted that Lim's former counsel had filed boilerplate briefs in this and other cases, the proper avenue for raising a claim of ineffective assistance of counsel is by filing a motion to reopen before the BIA. See Lu v. Ashcroft, 259 F.3d 127, 132 (3d Cir. 2001). A remand would allow Lim to avoid the time requirements applicable to a motion to reopen. Thus, we decline to order a remand.

Finally, Lim argues that the IJ erred in denying his application for

7

withholding of removal.  Our review, however, is limited to the BIA's decision summarily dismissing Lim's appeal.  <u>See</u> 8 U.S.C. § 1252(a)(1) (providing for judicial review of final orders of removal); 8 C.F.R. § 1003.1(d)(2)(ii) (stating that an order summarily dismissing an appeal is a final decision of the Board).

Accordingly, we will deny the petition for review.