**Donald O. COE, Petitioner–Appellant,**

v.

**Otis THURMAN, Warden,
Respondent–Appellee.**

No. 90–55128.

United States Court of Appeals,
Ninth Circuit.

Submitted November 5, 1990.[*]

Decided Dec. 28, 1990.

Supplemental Opinion Filed
Feb. 15, 1991.

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Donald O. Coe, Chino, Cal., pro se.

Donald F. Roeschke, Deputy Atty. Gen. of California, Los Angeles, Cal., for respondent-appellee.

Before NELSON and REINHARDT, Circuit Judges, and TANNER, District Judge.**

DOROTHY W. NELSON, Circuit Judge:

Donald Coe, a California state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus. Coe claims that he has been denied due process of law by the failure of the California Court of Appeal to review his conviction in a timely and effective manner. He also claims that he has been denied effective assistance of counsel. We agree that the excessive delay in this case has violated his right to due process, and we therefore remand to the district court with instructions for it to enter an order directing the California Court of Appeal to hear his appeal within 90 days or release him.

** The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 1987, Donald Coe was convicted in a jury trial of one count of conspiracy and nine counts of burglary and sentenced to a ten-year prison term. On March 5, 1987, he filed a timely Notice of Appeal in the California Court of Appeal, Second District. Appellate counsel John Rodriguez was appointed two weeks later.[1] The delay that is the issue in this case then commenced because of the unavailability of the trial transcript. Continued delay caused by general court backlog and exacerbated by court reporters' involvement in the McMartin preschool molestation case led the Clerk's Office of the Court of Appeal to place the Court Reporter on the late list on August 25 and to begin to monitor the situation for progress. On April 6, 1988, the Court Reporter finally filed the notice of completion of the transcript, and on April 22, the record on appeal was filed with the Court of Appeal.

Rodriguez filed appellant's opening brief on September 16; four days later, he filed for augmentation of the record and leave to file a supplemental brief. The augmentation was not completed until October 6, 1989, over a year later. At the time appellant's reply brief in this court was filed on May 16, 1990, over three years after his Notice of Appeal was originally filed, co-appellants had still not filed their opening briefs in the California Court of Appeal, and the government was waiting for those before it filed.

While waiting for his appeal to be heard, Coe has filed a number of pro se motions. He first asked the California Court of Appeal to remove court-appointed counsel Rodriguez. When this motion was denied on January 22, 1988, Coe appealed to the California Supreme Court in March, again seeking removal of Rodriguez and also asking the court to order the trial court reporter to produce the record. This motion was also denied on June 1, but by that time the record had been produced.

Still frustrated by lack of action on his appeal, Coe filed for a writ of habeas corpus in the California Supreme Court, claiming inordinate delay and ineffective assistance of counsel. This was denied on May 23, 1989. Coe then filed for a writ in federal district court, making the same two

1. Two of Coe's co-defendants, each with separate counsel, also appealed their convictions, presumably at about the same time, though the record does not indicate precisely when.

claims. The district court denied the writ on November 11, 1989. Coe, still operating pro se, has appealed this last denial of the writ.

## II. STANDARD OF REVIEW

■ The denial of habeas corpus is reviewed de novo; however, district court findings of fact relevant to the denial are reviewed under a clearly erroneous standard. *Norris v. Risley,* 878 F.2d 1178 (9th Cir.1989).

## III. DENIAL OF DUE PROCESS

### A. Delay as Due Process Violation

■ Where a state guarantees the right to a direct appeal, as California does, the state is required to make that appeal satisfy the Due Process Clause. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). While the Sixth Amendment guarantees the accused a speedy *trial,* excessive delay in the *appellate* process may also rise to the level of a due process violation. *United States v. Antoine,* 906 F.2d 1379, 1382 (9th Cir.1990). *See also Burkett v. Cunningham,* 826 F.2d 1208, 1221 (3rd Cir.1987); *DeLancy v. Caldwell,* 741 F.2d 1246, 1247 (10th Cir.1984); *Rheuark v. Shaw,* 628 F.2d 297, 302 (5th Cir. 1980), *cert. denied sub nom. Rheuark v. Dallas County,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981).

■ The state argues that even if excessive delay does violate Coe's due process rights, he cannot raise that issue here. Since his criminal appeal is still pending in the state courts, he has not exhausted his state remedies. The state cites the alluring language in *Sherwood v. Tomkins,* 716 F.2d 632 (9th Cir.1983), on this point: "When ... an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts." *Id.* at 634. The government argues that the fit is perfect: not only is the state criminal conviction pending, but the challenged issues have been settled by the California Supreme Court. The reason for such a rule is that "even if the federal constitutional question raised by the habe-

as corpus petitioner cannot be resolved in a pending state appeal, that appeal may result in the reversal of the petitioner's conviction on some other ground, thereby mooting the federal question." *Id.* (citing *Davidson v. Klinger,* 411 F.2d 746, 747 (9th Cir.1969)); *see also Daniels v. Nelson,* 415 F.2d 323 (9th Cir.), *cert. denied,* 396 U.S. 994, 90 S.Ct. 494, 24 L.Ed.2d 459 (1969).

Our inquiry, however, is not terminated. As the habeas statute itself reminds us: if "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner," exhaustion is not required. 28 U.S.C. § 2254(b). The state argues that the state corrective procedure is the California Court of Appeal, which will hear the case. Petitioner counters that delay cases render the state processes ineffective because the corrective procedure never occurs.

The Ninth Circuit has not entertained habeas petitions in which prisoners have claimed that excessive appellate delays have violated their due process rights. If, however, we travel east to the Second Circuit, in whose bailiwick are the overcrowded prisons and backlogged calendars of the state of New York, we discover substantial caselaw on the delay issue.

The Second Circuit and federal district courts in the Southern and Eastern Districts of New York have all agreed that when petitioners' federal habeas claims concern delay, to send them back to the state courts on an exhaustion rationale is a risible solution. In fact, "it would be meaningless to insist that petitioner exhaust his state remedies when the essence of his due process claim arises directly out of his inability to do so." *Wheeler v. Kelly,* 639 F.Supp. 1374, 1378 (E.D.N.Y.1986), *aff'd,* 811 F.2d 133 (2nd Cir.1987). As a result, those courts have heard delay claims on the merits. *See, e.g., Simmons v. Reynolds,* 898 F.2d 865 (2nd Cir.1990); *Brooks v. Jones,* 875 F.2d 30 (2nd Cir.1989); *Wheeler; Geames v. Henderson,* 725 F.Supp. 681 (E.D.N.Y.1989). Other circuits have done the same. *See, e.g., Burkett; Rheuark.* [2]

In deciding this issue for the first time in this circuit, we now hold that since exces-

---

**2.** So disturbed that some of the delays threaten to carry on nearly as long as Dickens' *Jarndyce v. Jarndyce,* the Second Circuit has even heard delay cases where the state appeal was decided *before* the Second Circuit heard the case. Instead of declaring such cases moot, the court

has looked carefully to ensure no due process violation occurred between the conviction and the tardy appeal. *See, e.g., Simmons,* 898 F.2d at 867; *Mathis v. Hood,* 851 F.2d 612, 614 (2nd Cir.1988).

sive delay in obtaining an appeal may constitute a due process violation, a prisoner need not fully exhaust his state remedies if the root of his complaint is his inability to do so. We now assess petitioner's claim to see if this particular delay violated due process.

## B. Barker *Factors*

In analyzing delay claims on the merits, courts have routinely relied on the four factors laid out by *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Although the claim in *Barker* was that a speedy *trial*, not appeal, was denied, because the Supreme Court has never enunciated factors to be considered in weighing *appellate* delay claims, lower courts have simply transposed the delayed trial factors. *See, e.g., Antoine*, 906 F.2d at 1382; *Simmons*, 898 F.2d at 868; *Burkett*, 826 F.2d at 1225. It is important to note that *Barker* emphasized, "We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* at 521, 92 S.Ct. at 2187. In other words, the Court could "find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.* at 523, 92 S.Ct. at 2188. Instead of setting a rigid time limit, the court offered the following four factors for consideration: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. We now proceed through an examination of those factors.

### 1. Length of Delay

■ In the present case Coe filed his Notice of Appeal on March 5, 1987. This case was submitted to us three years and eight months later, and he will have to wait at least a few more months before his state appeal is ultimately heard. By the time the case is decided, the delay could easily extend to four years. This length of time is comparable to cases in which the Second Circuit has found due process violations. In *Wheeler* over three years elapsed between the appointment of appellate counsel and his removal and replacement by effective counsel to prosecute the appeal; in *Simmons* the lawyer was inactive for five years; in *Geames* the delay was over three and a half years; *Mathis* had a six-year delay; and in *Elcock v. Henderson*, 902 F.2d 219 (2nd Cir.1990), the delay was a staggering eight and a half years.

As mentioned above, however, there is no talismanic number of years or months, after which due process is automatically violated. We can agree that four years is an alarming amount of time; standing alone, however, it does not require a granting of the writ. We must assess the other three factors as well.

### 2. Reason for Delay

■ The petitioner argues that this huge delay was caused by the state's failure to monitor the dilatory court reporter, its failure to locate a missing search warrant, and assigned counsel's refusal to pursue the appeal with sufficient vigor. The state rejoins that the record is incredibly voluminous (several thousand pages), the court reporter was busy with the McMartin preschool molestation case, the defense requested time-consuming augmentation, co-appellants have not moved quickly, and the courts are admittedly backlogged.

It is true that here we cannot cite reasons for delay as egregious as the ones noted by the Second Circuit, where appeals have at times proceeded in a feckless and insouciant manner. *See, e.g., Wheeler* (appointed counsel did nothing for three years); *Simmons* (appointed counsel inactive for five years); *Diaz v. Henderson*, 905 F.2d 652 (2nd Cir.1990) (appointed counsel failed to perfect appeal for over five years); *Brooks* (series of appointed counsel delayed eight years). We concede that these cases and the present one diverge as to the reasons for delay. In the Second Circuit cases the sources of delay were the attorneys, whose blatant disregard of their clients resulted in the stalling of the appeals. In Coe's case the culprits are the court reporter and the police department, whose behavior, while hardly salubrious, is not comparable to the New York attorneys'.

All of this notwithstanding, failures of court-appointed counsel and delays by the court are attributable to the state. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 ("the ultimate responsibility for such circumstances [as negligence or overcrowded courts] must rest with the government rather than with the defendant"); *Geames*, 725 F.Supp. at 685. The government does not contest this, but rather claims that the case was always moving forward, albeit not with notable celerity. While we agree both that, despite nettlesome delays, this case has proceeded slowly along, and that petitioner's own requests (e.g., for augmen-

tation) have contributed to the snail's pace, we refuse to condone the otiose progression of this litigation. That the reasons here are removed from those in the Second Circuit is not a sufficient palliative; they remain unacceptable.

### 3. Defendant's Assertion of His Right

■ It certainly cannot be gainsaid that Coe has diligently and continuously asserted his rights. He has tenaciously hounded both federal and state courts in pursuit of an appeal.

The government argues that one step he has not taken is to move to sever his appeal from his co-appellants, thus avoiding the added delays they produce by tardy filings and supplemental motions. While this may be true, the less than punctilious performance of co-appellants has not been a major cause in the delay. All in all, Coe has amply fulfilled this requirement.

### 4. Prejudice to the Defendant

■ Petitioner initially cites *Harris v. Kuhlman*, 601 F.Supp. 987, 993 (E.D.N.Y. 1985), for the proposition that where delay between conviction and the hearing of an appeal lasts for longer than 50% of the prisoner's sentence, we can assume prejudice. This holding has since been implicitly overruled in the Second Circuit, *see Wheeler*, 639 F.Supp. at 1379, *aff'd*, 811 F.2d 133; *Geames*, 725 F.Supp. at 685, and we do not adopt it here. Denied this easy route, we should again refer to *Barker*, which listed the following three factors to look at when determining prejudice: 1) oppressive pretrial incarceration; 2) anxiety and concern of the accused; and 3) the possibility that the defense will be impaired. It emphasized that the last is the most significant. *Id.* 407 U.S. at 532, 92 S.Ct. at 2193. These have been slightly altered for appellate delay cases to the following: 1) oppressive incarceration pending appeal; 2) anxiety and concern of the convicted party awaiting the outcome of the appeal; and 3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial. *Antoine*, 906 F.2d at 1382 (using formulation of *Rheuark*, 628 F.2d at 303 n. 8).

As to the first, the incarceration would be unjustified and thus oppressive were the appellate court to find Coe's conviction improper. If it affirms the conviction, however, the incarceration will have been reasonable. *Antoine*, 906 F.2d at 1382. As to the second, he has "undoubtedly experienced anxiety and concern during the protracted pendency of this appeal," but no more "than any other prisoner awaiting the outcome of an appeal." *Id.* at 1382–83. As to the third, if the state is forced to retry Coe after the appeal, "the passage of [four] years will make it more difficult for petitioner to refresh the memory of witnesses or locate new exculpatory evidence." *Wheeler*, 639 F.Supp. at 1381. Though we hesitate to find extreme and fulsome prejudice to Coe, we believe enough exists here to satisfy this fourth factor.

### 5. Conclusion

Having now assessed the four *Barker* factors, we must determine whether a due process violation has occurred here. As *Barker* reminds us,

> We regard none of the four factors … as either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id.* 407 U.S. at 533, 92 S.Ct. at 2193. Here the scale tips in Coe's favor on all four of the factors. As a result, we hold that he has been denied due process.

### C. Remedy

■ Because his due process rights have been violated, Coe asks us to grant his writ and release him forthwith. Returning to our mentors in the Second Circuit, however, we see that such a remedy is not appropriate. Instead, that circuit has constructed an ingenious solution when finding due process violations from delay. It orders that the petitioner be released unless the appeal is heard within a set time, usually sixty or ninety days. *See, e.g., Simmons*, 898 F.2d at 869. The advantages of such a remedy, which avoids the extremes of the immediate release of the prisoner when he owes more prison time or his return to the drudgery of waiting for his appeal, are threefold. As *Simmons* explained, such an order "limits the time state courts may delay; it grants a prisoner the required relief, his appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal." *Id.* at 870.

We are persuaded by our sister circuit's sagacious approach, and we apply it here. Accordingly, on remand the district court should enter an order stating that the prisoner must be released if the California

Court of Appeal has not heard his appeal within 90 days of the filing of this opinion.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

 Under the Supreme Court's test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant is denied effective assistance of counsel where counsel does not offer reasonably effective assistance, and, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Coe contends his counsel Rodriguez made three unprofessional errors: 1) he failed to seek bail pending the state appeal; 2) he failed to expedite the appeal; and 3) he was dilatory and did not advance claims petitioner thought meritorious. We do not agree.

First, California requires prisoners to raise a substantial question that, if decided in their favor, would likely result in reversal in order to obtain bail pending appeal. Cal.Pen.Code, § 1272.1 (a law that Rodriguez explained to Coe in a letter). Coe has not raised such an issue. Further, counsel's review of the record has led him in his professional judgment to view seeking bail as futile, a decision we cannot deem necessarily unprofessional. Second, most of the delay has been caused by the court and the court reporters, not by counsel. Rodriguez has stayed reasonably on top of the case, despite some delays. Third, counsel's decision on what claims to raise on appeal cannot be prejudicial to Coe until after his appeal has been decided. If dissatisfied, Coe, an able pro se petitioner, may file his own supplemental brief.

Undergirding his claim of ineffective assistance of counsel is Coe's exasperation at the untoward delays in his case. Because we remedy this through our ordering the appeal to be heard within 90 days, we solve his main complaint. We cannot additionally hold that Coe has surmounted the redoubtable *Strickland* test for ineffective assistance of counsel.

1. The government did not raise its "new rule" argument in its original brief in this court, despite the fact that the relief the petitioner was seeking would obviously call for the very rule we are now told we could not establish. Even though the Attorney General offers no excuse for his failure to raise the issue in a timely manner, one can assume that the failure was due either to incompetence or the recognition that the argument completely lacks merit. Nevertheless, we may in appropriate circum-

## V. CONCLUSION

We vacate the district court's denial of the writ of habeas corpus, and we remand to the district court with instructions for it to enter an order stating that the prisoner must be released if the California Court of Appeal has not heard his appeal within 90 days of the filing of this opinion.

The mandate shall issue forthwith.

REVERSED and REMANDED.

## OPINION

Feb. 15, 1991.

PER CURIAM:

 In our earlier opinion in this case, we held that a prisoner in state custody may petition for a writ of habeas corpus during the pendency of his state court appeal where he claims that the state's failure to hear his appeal in a timely fashion violates due process. *Coe v. Thurman,* 922 F.2d 528, 530–31 (9th Cir.1990). We noted that "if 'there is an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner,' exhaustion is not required." *Id.* at 530 (quoting 28 U.S.C. § 2254(b)). The government now contends for the first time that we were precluded from ruling as we did because our decision creates a "new rule" on habeas in violation of the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See also Penry v. Lynaguh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Butler v. McKellar,* ―― U.S. ――, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Saffle v. Parks,* ―― U.S. ――, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). We find the government's argument meritless, and deny its petition for rehearing.[1]

 The government cites the following language from our opinion as evidence that our decision that exhaustion was not required in this case create a new rule: "[i]n deciding this issue for the first time in this circuit, we now hold that since exces-

stances address an issue raised for the first time in a petition for rehearing. *See Escobar Ruiz v. INS,* 813 F.2d 283, 285–86 (9th Cir.1987), affirmed by *Escobar Ruiz v. INS,* 838 F.2d 1020 (9th Cir.1988) (en banc). If the government's contention that the writ of habeas corpus is unavailable in this case were correct, that would have profound implications for the conduct of numerous cases in the Ninth Circuit. Thus, we exercise our discretion to address the merits of the government's petition. *See id.*

sive delay in obtaining an appeal may constitute a due process violation, a prisoner need not fully exhaust his state remedies if the root of his complaint is his inability to do so." 922 F.2d at 531.

It is clear that the new rule *Coe* establishes is not the kind of rule to which *Teague* applies. The purpose of the *Teague* doctrine is to ensure that state convictions are not invalidated based upon a principle of constitutional law of which the state courts were unaware at the time the conviction became final. The logic behind *Teague* is that habeas corpus serves to deter unconstitutional convictions, and that it can only serve as a deterrent when state courts know what is being deterred. Quoting Justice Harlan, the *Teague* plurality explained that "the threat of habeas serves as a necessary incentive for trial and appellate judges throughout the land to conduct their proceedings in a manner consistent with established constitutional principles. In order to perform this deterrence function, the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place." *Teague,* 109 S.Ct. at 1073 (quoting *Desist v. United States,* 394 U.S. 244, 262–63, 89 S.Ct. 1030, 1040–41, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). This is why the *Teague* inquiry is frequently stated to be whether the rule "imposes a new obligation on the States...." *E.g., Butler,* 110 S.Ct. at 1216 (quoting *Penry* and *Teague*).

Here, of course, the rule announced imposes no obligation at all on the states. Indeed, the new aspect of the rule has nothing to do with the procedures that the Constitution requires the states to follow. Instead, it deals with the jurisdiction of the federal courts. The new rule is an interpretation of the habeas statute, which states that exhaustion is not required where State corrective processes are inadequate. *See* 922 F.2d 530 (citing 28 U.S.C. § 2254(b)). This sort of interpretation of the jurisdictional statute is not governed by the *Teague* line of cases. Further, while the *Teague* line seeks to have new rules announced on direct review, instead of in collateral proceedings, such would be impossible in the instant case. Interpretations of a habeas statute must, by definition, occur on collateral review.

A simple analogy will illustrate the point. Suppose that a state court imposes community service as a punishment for some

crime, and suppose also that it is an open question whether community service constitutes "custody" within the meaning of the habeas statute. The petitioner attacks his conviction, alleging well-established constitutional error. The state contends that habeas jurisdiction does not lie because the petitioner is not in custody. It cannot seriously be maintained that a federal court cannot even address the threshold jurisdictional question of whether the petitioner is in custody because that determination calls for the formulation of a new rule. Yet that would be the result were we to adopt the government's theory. In the hypothetical example as well as the case before us, threshold jurisdictional issues in no way implicate the "new rule" line of cases.

Another critical distinction as to why this case is not governed by the *Teague* line may be found in the government's own quotation from *Butler* : "a decision announces a new rule 'if the result was not dictated by precedent existing at the time the defendant's conviction *became final.'* " *Id.,* 110 S.Ct. at 1216 (quoting *Teague,* 109 S.Ct. at 1070) (emphasis added and deleted). *See also Teague* at 1075 ("new constitutional rules of criminal procedure will not be applicable to those cases *which have become final* before the new rules are announced") (emphasis added and footnote omitted). Yet, in the present case, Coe's conviction is not final; in fact, finality is exactly what he is seeking.

Accordingly, the petition for rehearing is DENIED.