**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LARRY DON MAYNARD,

      Plaintiff-Appellant,

v.

SHARON CASEBOLT;
RENEE SWOPE; DENISE CALE;
J. R. PEARMAN,

      Defendants-Appellees.

No. 99-5211
(D.C. No. 96-CV-559-K)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Maynard, a state prisoner appearing *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint in which he alleged that defendants violated his First and Fourteenth Amendment rights by failing to provide him with certain records and transcripts needed to file an appeal of his criminal conviction. Defendant J.R. Pearman is the Presiding District Court Judge of Osage County, Oklahoma; defendants Sharon Casebolt and Renee Swope are court clerks for the Osage County District Court; and Denise Cale is a court reporter for the Osage County District Court.

## Background

Mr. Maynard was convicted by a jury in March 1991 of shooting with intent to kill and sentenced to 99 years' imprisonment. Appearing *pro se*, he filed a notice of appeal and designation of record with the trial court on April 1, 1991. Although much of the trial record was timely produced, Mr. Maynard alleged that the defendants failed to produce certain records and hearing transcripts, including some relating to prior adjudications that he was not competent to stand trial, which he needed in order to prosecute his appeal to the Oklahoma Court of Criminal Appeals (OCCA). Mr. Maynard's § 1983 complaint details the numerous requests, motions, and petitions he filed seeking these records and transcripts. The OCCA granted his mandamus petition on November 16, 1992, directing the Osage County District Court to transcribe and produce the requested

-2-

materials. Mr. Maynard alleges that defendants failed to comply with this order and told him in April 1993 that the requested records and transcripts were non-existent.

The OCCA granted Mr. Maynard extensions of time, giving him until January 31, 1994, to file his appellate brief. The OCCA finally dismissed his appeal in 1994. It also denied his post-conviction habeas petition seeking to reverse his conviction because of his inability to provide a complete record on appeal. Mr. Maynard alleges that defendants finally produced the requested records and transcripts, after being ordered to do so by a federal district court pursuant to his 28 U.S.C. § 2254 collateral challenge to his conviction, in the fall of 1994, eight to nine months after his time to file a direct appeal of his conviction expired.

Mr. Maynard filed his § 1983 complaint in June 1996, alleging that the defendants' delay in producing the necessary transcripts and records resulted in the dismissal of his state direct appeal, in violation of his due process rights. The district court initially dismissed Mr. Maynard's § 1983 complaint as frivolous in July 1996. It ruled that his action accrued on January 31, 1994, when the time to file his direct appeal expired, and was therefore barred by Oklahoma's two-year statute of limitations, Okla. Stat. Ann. tit. 12, § 95(3). On appeal, we reversed, holding that the district court's *sua sponte* dismissal of Mr. Maynard's

complaint was an abuse of discretion. We remanded for consideration of whether Mr. Maynard was mentally incapacitated at the time his action accrued, thereby tolling the applicable statute of limitations. *See Maynard v. Casebolt*, No. 95-5186, 1997 WL 259450, at \*\*2 (10th Cir. May 19, 1997) (unpublished). [1]

On remand, the federal district court granted defendants' motions to dismiss Mr. Maynard's complaint, ruling that all of his claims were premature under *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in his favor would necessarily imply that his criminal conviction was invalid. The district court also noted that, on February 17, 1998, the OCCA had granted Mr. Maynard the right to file a direct appeal of his criminal conviction out of time. Thus, the district court ruled that Mr. Maynard's due process claim that he had been denied meaningful access to the courts was moot. The district court also denied Mr. Maynard's request for appointment of a guardian ad litem. [2]

As of the district court's order and the parties' briefing in this appeal, Mr. Maynard's appeal was still pending before the OCCA. We note, however, that the OCCA docket report indicates that on May 10, 2000, after this appeal

---

[1] Mr. Maynard was twice adjudicated incompetent to stand trial on criminal charges, has received disability benefits as a result of his mental incapacity, and was incarcerated in Oklahoma's mental health unit of the state correctional facility at the time of his appeal. *See Maynard*, 1997 WL 259450, at \*\*2.

[2] Although Mr. Maynard signed all of the pleadings and briefs in this action, many include the statement that they were prepared with the assistance of a fellow inmate.

came at issue, the OCCA summarily affirmed Mr. Maynard's conviction on appeal. *See Oklahoma Court of Criminal Appeals*, Docket Report for Case No. F-1998-260 [Online]. Available: http://www.occa.state.ok.us/ .

## Analysis

### A. Immunity

Initially, we note that all of the challenged actions of defendant Pearman, a district judge for Osage County, Oklahoma, were judicial in nature. *See Rheuark v. Shaw*, 628 F.2d 297, 304-05 (5th Cir. 1980) (holding that state judge absolutely immune for role in supervising court reporters and ordering them to produce transcripts). As a state court judge, he is entitled to absolute immunity for his judicial acts and cannot be held liable for damages under § 1983. *See Forrester v. White*, 484 U.S. 219, 225-28 (1988). We therefore affirm the dismissal of all claims against Judge Pearman. Although the district court did not dismiss the claims against Judge Pearman on the basis of absolute judicial immunity, we can affirm the district court's dismissal on any basis that is supported by the record. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Defendant Cale, a court reporter, is not absolutely immune from damages liability. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436-37 (1993) (explaining that a court reporter, unlike a judge performing an adjudicative act,

does not exercise discretion in the performance of that function). Whether defendants Casebolt and Swope, who are district court clerks, are entitled to absolute quasi-judicial immunity or only qualified immunity depends on the nature of the function they were performing. Absolute immunity from damages under § 1983 is extended to court officials other than judges when the officials perform judicial functions comparable to those that would have been accorded absolute protection at common law. *Antoine*, 508 U.S. at 436. Judicial officers performing ministerial acts unrelated to the function judicial immunity is intended to protect are not covered by absolute immunity. *Id.* at 436-37. Because of the undeveloped factual record in this case, we are unable to determine the precise scope of immunity to be afforded the court clerk defendants in this case.

## B. *Heck v. Humphrey*

In *Heck*, the Supreme Court held that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487.

We agree with the district court that Mr. Maynard's claim that defendants conspired to deprive him of the records and transcripts necessary to appeal his 1991 conviction necessarily implies the invalidity of his conviction. Because Maynard's conviction has not been invalidated, this claim is not cognizable under § 1983, and was properly dismissed under *Heck*. We disagree, however, with the court's application of *Heck* to all of Mr. Maynard's claims.

## C. Right to a Speedy Appeal

Citing *DeLancy v. Caldwell*, 741 F.2d 1246, 1248 (10th Cir. 1984) and *Harris v. Champion*, 15 F.3d 1538, 1557 (10th Cir. 1994), Mr. Maynard argues on appeal, as he did before the district court, that defendants' failure to timely provide him with the necessary records and transcripts constituted an independent due process violation because of the inordinate delay in having his appeal decided. He argues that this claim should not have been dismissed under *Heck*. We agree.

In *DeLancy*, we recognized that "[a]n excessive delay in furnishing a pretrial or trial transcript to be used on appeal or for post-conviction relief can amount to a deprivation of due process." 741 F.2d at 1247. We further held that this due process claim is not mooted merely because the plaintiff is ultimately supplied with a copy of the requested transcript. *Id*. If a plaintiff can establish a delay in his appellate process resulting from a court reporter's failure to provide

him with a transcript, and can prove damages as a result thereof, we held that he is entitled to recover under § 1983, absent immunity or other appropriate defenses. *See id*. at 1248; *see also United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1990) (three-year delay, two years of which were attributable to court reporter's failure to provide transcript, triggered due process inquiry); *Rheuark*, 628 F.2d at 302-03 (transcript delay of twenty-three months held to exceed limits of due process).

Similarly, in *Harris*, we recognized that an inordinate delay in adjudicating a defendant's direct criminal appeal could give rise to an independent due process violation. 15 F.3d at 1557. "[A]n appeal that is inordinately delayed is as much a 'meaningless ritual' as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings." *Id*. at 1558 (citation omitted). *Harris* established a rebuttable presumption that the state appellate process will be deemed ineffective if the state has been responsible for a delay of more than two years in adjudicating the petitioner's direct criminal appeal. *Id*. at 1556. Delays caused by court reporters are attributed to the government for the purpose of determining whether a plaintiff has been deprived of due process on appeal from his conviction. *See Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990).

We have identified four factors to be considered in determining whether appellate delay constitutes a due process violation: (1) the length of delay; (2) the reason for the delay; (3) whether the plaintiff asserted his right to a timely appeal; and (4) whether the delay prejudiced the plaintiff by (i) causing him to suffer oppressive incarceration pending appeal; or (ii) causing him to suffer constitutionally cognizable anxiety and concern awaiting the outcome of his appeal; or (iii) impairing his grounds for appeal or his defenses in the event of a reversal and retrial. *See Harris*, 15 F.3d at 1558-59; *DeLancy*, 741 F.2d at 1247-48.

Here, the three-year delay in providing the requested records and transcripts allegedly attributable to the defendants delayed resolution of Mr. Maynard's appeal until more than nine years after his conviction. This clearly qualifies as an inordinate delay capable of triggering due process concerns. The record does not provide any explanation for the delay. Mr. Maynard filed timely and frequent requests and motions seeking the records and transcripts needed for his appeal.

We have an insufficient basis in the record before us to assess whether the delay prejudiced Mr. Maynard. Although it appears from our own investigation that the OCCA has affirmed Mr. Maynard's conviction, we decline to engage in

any fact-finding in the first instance.  We therefore remand the action for the district court to conduct the necessary inquiry under *DeLancy* and *Harris*.[3]

### D.  Appointment of a Guardian Ad Litem

Mr. Maynard also contends the district court erred in denying his motion seeking appointment of a guardian ad litem pursuant to Fed. R. Civ. P. 17(c) because of his alleged mental incompetency without making any inquiry into his competence.  Rule 17(c) provides that "[t]he court shall appoint a guardian

---

[3]     We have held that a plaintiff cannot show impairment of ability to mount defense on retrial, constitutionally cognizable anxiety, or oppressive incarceration if his delayed appeal is ultimately found to be without merit.  *See Harris*, 15 F.3d at 1564-65.  Even assuming, however, that a denial of Mr. Maynard's direct appeal eliminates these bases for prejudice, issues we do not decide, the question of whether the delay impaired his grounds for appeal would, nevertheless, remain a necessary area of inquiry on remand.

In this regard, it appears from Mr. Maynard's complaint that at least some, if not all, of the requested records and transcripts related to the prior adjudications that he was not competent to stand trial on other criminal charges.  The OCCA docket entries for Mr. Maynard's direct appeal indicate that a "retrospective post-examination competency hearing" was held in December 1999 in connection with his appeal.  *See Oklahoma Court of Criminal Appeals*, Docket Report for Case No. F-1998-260 (docket entries for May 26, 1999, and December 10, 1999) [Online].  Available: http://www.occa.state.ok.us/.  The passage of time and the availability of witnesses and evidence are important factors which must be considered by a court when determining whether a retrospective evaluation of a defendant's competency is meaningful.  *See Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999), *petition for cert. filed*, (U.S. May 20, 2000) (No. 99-9630) (articulating factors to be considered).  These same considerations appear relevant to the inquiry into whether the delay in Mr. Maynard's appeal impaired his grounds for appeal.

ad litem for an . . . incompetent person not otherwise represented . . . or shall make such other order as it deems proper for the protection of" that person.

Here, without addressing Mr. Maynard's alleged incompetence, the district court found that no appointment was necessary because the claims were premature under *Heck* and because Mr. Maynard had been able to prosecute this action to date without the appointment of a guardian ad litem with help from a fellow inmate. As we noted in the prior appeal of this case, "Mr. Maynard's complaint details a long history of mental illness." *Maynard*, 1997 WL 259450, at **2. On remand, the district court should consider whether an inquiry into Mr. Maynard's mental competency is warranted. *See Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986).

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED in part, REVERSED in part, and the matter is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court


Wade Brorby
Circuit Judge