Higinia MARTINEZ–DE BOJORQUEZ,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–73014.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed April 22, 2004.

Gary Finn, Indio, CA, for the petitioner.

Jacqueline R. Dryden (argued) and Arthur L. Rabin, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before B. FLETCHER, PREGERSON, and BRUNETTI, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

Higinia Martinez-de Bojorquez ("Martinez") petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA refused to consider Martinez's appeal from the Immigration Judge's denial of relief under former section 212(c) of the Immigration and Nationality Act ("INA"). The Immigration Judge ("IJ") had concluded that Martinez's departures from the United States while an earlier appeal had been pending with the BIA resulted in a withdrawal of that appeal pursuant to 8 C.F.R. § 1003.4,[1] rendering Martinez's original deportation order final. The IJ therefore ruled that Martinez was no longer a permanent resident eligible for section 212(c) relief. The BIA refused to consider Martinez's contentions, finding that no proceedings after the alleged withdrawal of the earlier appeal were valid. Martinez timely petitioned for review. Because deportation proceedings against Martinez began before April 1, 1997, this case is governed by the transitional rules set forth in section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104–208, div. c., 110 Stat. 3009. Pursuant to the transitional rules, we have jurisdiction under former 8 U.S.C. § 1105a, as amended by IIRIRA. *See Kalaw v. INS,* 133 F.3d 1147, 1149–50 (9th Cir.1997).[2] We grant the petition and remand for further proceedings.

---

1. Former 8 C.F.R. § 3.4 was recodified at 8 C.F.R. § 1003.4 on March 5, 2003, pursuant to the reorganization of regulations resulting from the creation of the Department of Homeland Security. *See* 68 Fed. Reg. 10,349 (March 5, 2003). Throughout this opinion we refer to the regulation by its current citation, § 1003.4, even though the earlier proceedings referred to the earlier version. We note, however, that the relevant language of the regulation remains unchanged.

2. The government contends that we do not have jurisdiction to review this case because Martinez failed to exhaust her administrative remedies. *See* 8 U.S.C. § 1105a(c) (Supp. 1995). That jurisdictional argument, however, is intertwined with the merits of this case because it depends on a finding that Martinez's departures from the United States resulted in a waiver of her BIA appeal. If Martinez did not waive her appeal, then she did exhaust her remedies and we have jurisdiction over this case. Of course, we have

*I.  Background and Procedural History*

Martinez, a native and citizen of Mexico, first came to the United States in 1972. She spent over a decade here as an undocumented alien but in the 1980s was able to obtain legal status, eventually becoming a lawful permanent resident in 1987. In December 1992, the former Immigration and Naturalization Service ("INS")[3] initiated deportation proceedings against Martinez under former section 241 of the INA, 8 U.S.C. § 1251 (Supp.1995), charging that she knowingly assisted and aided her cousin to enter the United States illegally. Martinez had a hearing before the IJ in September 1993. After hearing testimony and receiving other evidence, the IJ found Martinez deportable as charged. Through her counsel, Martinez indicated that she reserved the right to appeal the IJ's decision. The IJ informed Martinez that she had ten days during which to file her notice of appeal, but made no mention of the fact that the appeal would be deemed withdrawn pursuant to INS regulations if she were to depart the country—even temporarily—while the appeal was pending. After Martinez filed the proper forms with the BIA, she received a number of notifications informing her that her appeal was pending and setting forth a briefing schedule, but she was again not informed that her departure from the United States would constitute a withdrawal of the appeal.

The BIA did not issue a decision in Martinez's case until four-and-a-half years later, in March 1998. While Martinez's appeal was pending, we issued our decision

in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir.1995), which clarified that certain individuals in Martinez's situation were eligible to apply for relief from deportation under former section 212(c) of the INA. Martinez therefore filed a motion with the BIA requesting remand to the IJ so that she could apply for section 212(c) relief. The BIA's decision in 1998 affirmed the IJ's determination that Martinez was deportable but also granted Martinez's motion and remanded the case to the IJ so that Martinez could seek relief from deportation.

The IJ held a hearing on Martinez's section 212(c) application in May 1998. Martinez presented the relevant documentation and testified on her own behalf, particularly stressing her family ties in the United States, including the fact that her husband was a legal permanent resident and that her children and grandchildren were all United States citizens. Martinez also testified that, other than the smuggling charge for which she was found deportable, she had not had any problems with law enforcement or immigration officials.[4] Unfortunately for Martinez, however, she also testified that she had been making brief visits to her doctor and her dentist just across the border in Mexico over the past two to three years. Martinez explained that she went to Mexico for these visits because her employer-provided health insurance covered a greater percentage of medical treatment in Mexico than it did in the United States.

After Martinez's testimony, counsel for the INS argued that Martinez was no

---

jurisdiction to determine our jurisdiction. *See United States v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).

**3.**  On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly created Department of Homeland Security.

*See Aguilera–Ruiz v. Ashcroft*, 348 F.3d 835, 835 n. * (9th Cir.2003).

**4.**  Martinez did appear to concede that she had not been truthful at her original immigration hearing regarding the circumstances of the smuggling charge.

longer eligible for section 212(c) relief because her departures to Mexico while her appeal was pending at the BIA constituted a withdrawal of her appeal under 8 C.F.R. § 1003.4.[5] The IJ noted that this seemed a "very harsh rule," but he asked counsel to brief the issue and continued the hearing to a later date. After the parties had made their submissions, the IJ found that Martinez's departures had indeed constituted a waiver of her appeal with the BIA, which meant that Martinez's original order of deportation had become effective and that Martinez was therefore not eligible for section 212(c) relief because she was no longer a legal permanent resident. The IJ added:

> I will just tell you frankly that I have a real intellectual problem with that view of the law. I don't think that a person such as yourself who departed purely for dental work and who was gone no longer than required to accomplish the purpose of your trip, who strayed no farther from the border than a few miles at the most and who was each time lawfully admitted using your green card when you returned to the country that those departures should be such—have such a dire effect. But I'm not empowered under the law to consider the reasonable [sic] or arbitrariness of the regulation.

AR 182–83. The IJ also noted that, but for the application of § 1003.4, he would have been inclined to grant section 212(c) relief as a matter of discretion.

Martinez appealed the IJ's decision to the BIA. The BIA refused to consider her claims, in essence upholding the finding that Martinez's brief departures from the United States had withdrawn the earlier appeal and had rendered the initial deportation order final. Martinez timely petitioned for review.

## II. Discussion

■ Martinez raises a number of challenges to the application of 8 C.F.R. § 1003.4 to her case. Several of her arguments are foreclosed by our recent decision in *Aguilera–Ruiz v. Ashcroft*, 348 F.3d 835 (9th Cir.2003), where we held that § 1003.4 does not provide an exception for "brief, casual, and innocent" departures from the United States—as is the case in other contexts of immigration law—and that the Attorney General had statutory authority to enact § 1003.4. Unlike the petitioner in *Aguilera–Ruiz*, however, Martinez also raises constitutional arguments against the application of § 1003.4. In particular, she argues that applying § 1003.4 in the circumstances of her case constitutes a violation of due process because she was not given any notice of the drastic consequences that even a brief departure from the United States would have on her proceedings. We agree with Martinez that her due process rights were violated and therefore grant the petition.[6]

■ It is well-established that aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution. *See Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Dobrota v. INS*, 311 F.3d 1206, 1210 (9th Cir.2002). The

5. 8 C.F.R. § 1003.4 provides, in relevant part: Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

6. We review de novo claims of violations of due process in deportation proceedings. *See Padilla v. Ashcroft*, 334 F.3d 921, 923 (9th Cir.2003).

protections of the Due Process Clause extend to the ability of aliens to seek review of deportation orders entered by immigration judges with the BIA. *See Singh v. Ashcroft*, 362 F.3d 1164, 1168–70 (9th Cir. 2004); *Vargas–Garcia v. INS*, 287 F.3d 882, 884–85 (9th Cir.2002); *Castillo–Manzanarez v. INS*, 65 F.3d 793, 795–96 (9th Cir.1995); *Padilla–Agustin v. INS*, 21 F.3d 970, 977 (9th Cir.1994), *overruled on other grounds by Stone v. INS*, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). In prior cases, we have found a due process violation when the BIA failed to inform aliens appealing adverse decisions by immigration judges about certain requirements they must meet when filing their appeal. *See Vargas–Garcia*, 287 F.3d at 884–86; *Castillo–Manzanarez*, 65 F.3d at 795–96; *Padilla–Agustin*, 21 F.3d at 977; *see also Toquero v. INS*, 956 F.2d 193, 196–97 (9th Cir.1992) (finding no due process violation because alien had received sufficient notice through other means). In *Padilla–Agustin* and the cases that followed it, we examined situations in which the BIA had summarily dismissed appeals by aliens on the grounds that their notices of appeal had not been sufficiently specific as required by INS regulations and BIA precedents. *See Padilla–Agustin*, 21 F.3d at 974–77. We held that the "concatenation" of factors—including the confusing nature of BIA forms and the failure by the BIA to give any advance warning before it dismissed an appeal—resulted in a violation of due process. *Id.* at 977; *see also Castillo–Manzanarez*, 65 F.3d at 796.

▪ We find the situation presented in this case analogous to that addressed by *Padilla–Agustin* and its progeny. Martinez has been a lawful permanent resident of this country since 1987. At her deportation hearing, she was informed of her right to appeal, but she was not told that, by virtue of § 1003.4, her appeal would be deemed waived if she left the country for even a few minutes. Martinez was allowed to keep her "green card," which identified her as a legal permanent resident eligible to freely travel to and from this country. When she filed her appeal with the BIA, Martinez received a number of notifications regarding the process, but at no time was she told that her appeal would be forfeit if she went to Mexico even briefly. The BIA then took four-and-a-half years to decide her appeal, a substantial amount of time during which it is not unreasonable for a legal permanent resident to have to travel outside the country. Finally, as far we can discern from the record, Martinez's absences were all very short—not longer than two days—and involved trips only a few miles from the border. We hold that the "concatenation" of circumstances in this case, but particularly the undisputed fact that Martinez was never warned about the severe consequences that even a brief departure from the United States would have on her case, constitute a violation of due process. *See Walters v. Reno*, 145 F.3d 1032, 1042 (9th Cir.1998) (finding that "a confluence of factors" rendered the notices involved in that case constitutionally inadequate).[7]

---

7. Indeed, the due process violation in this case is even clearer than it was in the *Padilla–Agustin* line of cases. In those cases, the BIA had at least made an attempt to inform aliens filing appeals of the possibility that an appeal would be summarily dismissed. *See, e.g., Vargas–Garcia v. INS*, 287 F.3d at 885 (noting that the EOIR 26 form advised aliens that

"The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice...."). By contrast, the record shows no attempt on the part of the INS, the Immigration Judge, or the BIA to inform or warn Martinez that her appeal would be withdrawn if she left the country.

Our conclusion is the same when we analyze Martinez's due process claim under the test set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews*, the Court detailed the factors to be considered when a claim is raised that an administrative procedure which affects private interests denies due process. Those factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. As to the first *Mathews* factor, we have previously noted that "the private liberty interests involved in deportation proceedings are among the most substantial." *Padilla–Agustin*, 21 F.3d at 974. Indeed, we noted in *Padilla–Agustin* that "[i]ssues of exceeding importance—even life and death importance—may turn on an appeal to the BIA." *Id.* at 976; *see also Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) ("Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."). Regarding the second *Mathews* factor, the risk of erroneous deprivation of the private interest, it is clear that the forfeiture of the right to appeal will increase the risk of error since it will deprive the alien of review by both the BIA and this Court. *See Padilla–Agustin*, 21 F.3d at 977. Indeed, this case illustrates the risk of error when an appeal is deemed waived: Martinez was found to be eligible for relief from deportation during her appeal and—but for the application of § 1003.4—she would likely have been granted that relief. Moreover, we find that an appropriate warning to the alien about the consequences of even brief departures from the United States while an appeal is pending will have significant value as a procedural safeguard to ensure aliens are not deprived of their appeal rights unknowingly and arbitrarily.

Finally, the additional burden imposed on the government in having to provide a warning regarding the effect of 8 C.F.R. § 1003.4 is not substantial. While we do not decide what type of warning would be appropriate under the circumstances because it is clear from the record that no notice was given to Martinez, we are confident that providing notice to a person such as Martinez would result in minimal cost to the government. Providing such notice, however, would go a long way in remedying the inequities that the application of 8 C.F.R. § 1003.4 can cause.

In sum, all of the *Mathews* factors weigh in favor of a finding that due process requires that some form of notice be given directly to individuals in Martinez's circumstances before their appeals are deemed waived pursuant to 8 C.F.R. § 1003.4 when they briefly leave the United States.[8]

---

**8.** In response to Martinez's due process claim, the government points to cases indicating that the enactment of administrative regulations provides sufficient notice to the parties involved for due process purposes. However, "[a]s the *Mathews* balancing test makes clear, whether a particular procedure is sufficient to satisfy due process depends on the circumstances." *Walters*, 145 F.3d at 1043; *see also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such proce-

When an alien raises a due process challenge to his or her deportation proceedings, we generally require a showing of prejudice from the constitutional violation. *See Ortiz v. INS,* 179 F.3d 1148, 1153 (9th Cir.1999).[9] In order to show prejudice as a result of a constitutional violation, a petitioner must show that the inadequate procedures occurred "in a manner so as potentially to affect the outcome of the proceedings." *Hartooni v. INS,* 21 F.3d 336, 340 (9th Cir.1994). We find that Martinez has made that showing: had she been warned about the consequences that departing the country would have on her appeal with the BIA, we find it likely that she would have refrained from traveling to Mexico while the appeal was pending. And, had she not left the United States and triggered the application of 8 C.F.R. § 1003.4, she almost certainly would have received relief under section 212(c) as a matter of discretion, something that the IJ stated explicitly during the 1998 hearing.

### III. Conclusion

We hold that, under the circumstances of this case, the application of 8 C.F.R. § 1003.4 without any notice whatsoever constituted a violation of due process. We therefore find that Martinez's original appeal to the BIA was not withdrawn pursuant to the regulation and that the IJ erred in finding that Martinez was not eligible for section 212(c) relief because she was no longer a legal permanent resident. We

remand to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED; REMANDED.**

---

dural protections as the particular situation demands."). While the existence of regulations may provide sufficient notice for due process purposes in some contexts, we find that it does not do so here. Moreover, the due process claims in *Padilla–Agustin* and other cases finding inadequate notice of BIA procedures were not defeated by the fact that the aliens in those cases may have been able to ascertain the specificity requirements by consulting the relevant regulations. *See Padilla–Agustin,* 21 F.3d at 976 (discussing the

regulations requiring that claims in the notice of appeal be specific).

9. In *Walters,* 145 F.3d at 1045, we questioned whether a showing of prejudice was required when the due process claim involved an allegation of constitutionally insufficient notice. Because we find that Martinez can demonstrate prejudice in this case, we assume but do not decide whether a showing of prejudice is required.