**Patrizia KOUROPOVA, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–73824.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2006.

Decided Sept. 1, 2006.

Stuart I. Folinsky, Esq., Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, John D. Williams, Esq., Ari Nazarov, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: GRABER, WARDLAW, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Patrizia Kouropova[1] petitions for review from the BIA's September 26, 2003 decision denying her asylum and suspension of deportation. Because of the inexcusable delay in processing her case, the repeated errors by the Immigration Judge (IJ), and the serious prejudice this delay caused her, we hold that the handling of her case did not comport with due process and fundamental fairness and grant her petition for review.[2]

1. This case presents a unique and troublesome factual history. Kouropova originally applied for asylum in September 1993, two years after her arrival in the United States from Armenia. She sought asylum, alleging that she had a well-founded fear of future persecution on account of imputed political opinion. The IJ denied her claim in February 1994, on the basis of a lack of corroborating evidence. The BIA did not rule on her appeal for six and a half years, until August 2000, when it remanded the case for the IJ to make an explicit credibility determination, noting that the IJ had required evidence corroborating Kouropova's testimony, in violation of our clear precedent. Two years later, the same IJ again denied her asylum relief again, on (very similar) adverse credibility grounds. Another eighteen months passed, and the BIA rejected the IJ's ad-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. In proceedings before the Immigration Judge and Bureau of Immigration Appeals, the petitioner's name was spelled Kuropova. We will instead use Kouropova, the spelling she uses on her briefs before this court.

2. Although Kouropova did not raise a due process delay claim before the BIA, that claim became ripe only upon the BIA's second delay in processing her appeal and its reliance on the delay to deny her asylum claim. Moreover, she does not allege the sort of procedural error that could be corrected by the administrative tribunal but rather a constitutional violation in the BIA's overall management of the appeal process itself. *See Liu v. Waters,* 55 F.3d 421, 426 (9th Cir.1995).

verse credibility finding as premised on "insufficient" bases and an incorrect understanding of the law. While the BIA acknowledged that Kouropova's "credible testimony establishes that she has a subjective fear of persecution," it found that changes in Armenia during the ten years since Kouropova's original asylum application, primarily related to the passage of time and her and her father's absence from the country, had mitigated the objective basis for her fear of persecution.

■ 2. Aliens facing removal are entitled to due process under the Fifth Amendment. *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 803 (9th Cir.2004). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks omitted). Due process is denied when an immigration proceeding is "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000) (internal quotation marks omitted). In addition to a showing that due process has been violated, an alien must also demonstrate that the violation caused her prejudice, meaning that the proceeding may have been affected by the violation. *Id.*

3. In considering whether unusual administrative delay violated due process, "there is no talismanic number of years or months, after which due process is automatically violated." *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir.1990). Moreover, we typically require additional irregularities in the administrative process beyond the delay alone. *Id.* That said, we have found due process violations for delays far

shorter than the ten years Kouropova was kept in limbo, when that delay was combined with other elements of unfairness. *See Martinez-de Bojorquez*, 365 F.3d at 804 (four-and-a-half year delay, combined with failure to warn alien of the consequences of brief departures, violated due process); *Coe*, 922 F.2d at 531–32 (four-year delay in criminal appeal, caused by the state's administrative failures, despite defendant's "diligent[ ] and continuous[ ]" effort to have his case heard, violated due process); *cf. Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (recognizing that the length of wrongful deprivation of benefits is a significant factor in the due process analysis). We also note that, while they post-date Kouropova's appeals, the current BIA regulations requiring timely review establish that an appeal must be decided no later than 240 days after the record is completed, including a discretionary extension. 8 C.F.R. § 1003.1(e)(8). Given that the BIA believes immigration appeals should typically be decided well within a year, a nine-and-a-half-year delay is wholly inconsistent with principles of fundamental fairness.

Moreover, the delay occurred through no fault of Kouropova's. Although the IJ's decision was obviously erroneous, it took the BIA six years to reverse it, and another three years before the BIA finally evaluated the legitimacy of her persecution claim. While the administrative backlog at the BIA in the late 1990s has been well-documented,[3] it is the government, not the alien, that should bear the burden of the agency's administrative backlogs and congressionally-limited resources. *See Coe*, 922 F.2d at 531–32.

---

**3.** The BIA's backlog in the late 1990s and early into this decade had reached to more than 56,000 cases when then-Attorney General John Ashcroft announced streamlining procedures in February 2002. Cheryl Thompson, *Ashcroft Moves to Cut Immigration Appeal Backlog*, The Washington Post, Feb. 7, 2002, at A11.

The behavior of the IJ and the Government in this case only confirm the unfairness of the proceeding. On remand, the IJ made the exact same error which had been the basis for the remand, demanding corroborative evidence above and beyond Kouropova's testimony. He also blatantly misinterpreted the BIA's remand order to require Kouropova to submit new evidence about country conditions in Armenia, when the BIA had suggested only that she should have the opportunity to do so. These clearly avoidable errors not only prevented her from obtaining a fair hearing in 2002, but they also heightened Kouropova's predicament by putting off for another eighteen months a review of the merits of her claim. The Government and the BIA then sought to use to their advantage the extraordinary delays that had occurred in processing her case. The BIA relied extensively on the length of time Kouropova and her father had been away from Armenia, a period that was the result of government delay and nothing else, as a basis for rejecting the objective reasonableness of her fear of future persecution. In its brief before us, the Government's primary argument in defense of the BIA's asylum determination is that "more than ten years" have passed since the events that underlay her fear of persecution and that her fears should be "moot in light of her father's move to Moscow and disassociation with politics since 1993." We cannot accept this line of argument. It is "fundamentally unfair to permit the BIA to rebut the presumption of persecution by relying on its own administrative delay in processing the claims of petitioners." *Salazar–Paucar v. INS*, 281 F.3d 1069, 1077 (9th Cir.2002). Given the nature of this particular delay, we refuse to hold Kouropova responsible for the staleness of her claim and in doing so, rule in favor of the Government on the basis of problems it created.

Finally, there can be no doubt that the delay caused Kouropova significant prejudice. When she testified in February 1994, she had fled Armenia only two years earlier, following an extensive period of political harassment and threats against her family that culminated with her being surrounded by party thugs and threatened at gunpoint with rape and murder. Only six months before her IJ hearing, her father had briefly returned to Armenia to visit his sick mother, only to be confronted by government soldiers in uniform and beaten so severely that he was hospitalized for two months. Given the BIA's ultimate determination that her 1994 testimony was "consistent, specific, and sufficiently-detailed," the outcome of Kouropova's proceedings easily "may have been affected" by the due process violation. *Colmenar*, 210 F.3d at 971.

Therefore, the particular "concatenation of circumstances" in this case, including the BIA's ten-year delay in resolving the appeal, the IJ's repetition of the same mistakes on remand, the Government's attempt to use its own delay for a tactical advantage, and the lack of any stalling or blame on Kouropova's part, "constitute[d] a violation of due process" that prejudiced Kouropova's asylum claim. *Martinez-de Bojorquez*, 365 F.3d at 804 (internal quotation marks omitted).

4. Because the extreme delay was the fault of the government, we remand to the BIA with instructions to determine in the first instance whether Kouropova was eligible for asylum given the facts and law as they existed in 1994. "Any other remedy would be inconsistent with the due process guarantees afforded to aliens in deportation proceedings." *See Castillo–Perez v. INS*, 212 F.3d 518, 528 (9th Cir.2000) (remanding with instructions to apply the law in place before the due process violation occurred). On remand, because the BIA

has already found Kouropova's testimony credible, it must accept the facts of her testimony as true. *See Singh v. Gonzales,* 439 F.3d 1100, 1112 (9th Cir.2006); *Smolniakova v. Gonzales,* 422 F.3d 1037, 1048 (9th Cir.2005).

■ 5. Finally, the BIA did not err in concluding that Kouropova was ineligible for suspension of deportation because IIR-IRA's stop-time rule applied retroactively to her case and her "continuous physical presence" in the United States ended when she was served an Order to Show Cause on May 13, 1993. 8 U.S.C. § 1229b(d)(1); *Ram v. INS,* 243 F.3d 510, 516–17 (9th Cir.2001). Continuous physical presence cannot restart after the issuance of the Order to Show Cause, *Ram,* 243 F.3d at 517–18, and the cases cited by Kouropova do not undermine this conclusion.

**PETITION FOR REVIEW GRANTED in part and DENIED in part.**

**REMANDED.**